ACCEPTED
14-15-00267-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/25/2015 8:23:30 AM
CHRISTOPHER PRINE
CLERK

## NO. 14-15-00267-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
9/25/2015 8:23:30 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE FOURTEENTH DISTRICT COURT OF APPEALS
## HOUSTON, TEXAS

### TEX-FIN, INC., and
### TEXAS WORKFORCE COMMISSION

**Appellants,**

**v.**

### GUSTAVO E. DUCHARNE

**Appellee.**

_____

Appeal from the 129th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2010-64089

_____

## APPELLEE'S BRIEF

LAW OFFICE OF G. SCOTT FIDDLER, P.C.

G. Scott Fiddler
State Bar No. 06957750
1004 Congress, 2nd Floor
Houston, Texas 77002
Tel.:   (713) 228-0070
Fax:   (713) 228-0078

SEPTEMBER 24, 2015            ATTORNEY FOR APPELLEE

ORAL ARGUMENT REQUESTED

**RECORD REFERENCES**

The record will be referred to as follows:

Clerk's Record                                      "CR. [Page #]"

Appendix                                            "App. [Tab # CR. : Page #]"

No Reporter's Record was requested

# TABLE OF CONTENTS

Record References ............................................................................................. ii

Table of Contents............................................................................................. iii

Index of Authorities ......................................................................................... v

Statement Regarding Oral Argument ............................................................... x

Statement of the Case ...................................................................................... x

Issues Presented .............................................................................................. xi

I.  Statement of Facts ................................................................................. 1

II. Summary of Argument........................................................................... 3

III. Argument ............................................................................................... 4

    A.    Standard of Review – Trial *de Novo*, Applying the Substantial Evidence Rule .............................................................................. 4

    B.    Texas Payday Act and Interpretation of Contracts ............................ 7

    C.    The TWC Did Not Apply the Correct Legal Standard to the Undisputed Facts..................................................................... 8

IV. Trial Court's Remand ........................................................................... 18

    A.    The Trial Court Was Within Its Power to Enter Judgment ................ 18

    B.    Because the Trial Court Reversed the TWC, the Trial Court was Required to Render Judgment in Ducharne's Favor .......................... 21

V.  Tex-Fin's Objections ........................................................................... 23

    A.    References in Ducharne's Affidavit to "Bonus/Commissions" Do Not Violate the Parol Evidence Rule ...................................................... 23

    B.    Ducharne's Testimony Regarding the Amount Earned Does Not Violate the Parol Evidence Rule ...................................................... 24

    C.    Ducharne's Testimony Regarding the Amount Earned Does Not Violate the Best Evidence Rule....................................................... 25

D.    Ducharne's Testimony Regarding the Amount of Sales Is Relevant ............................................................................ 26

E.    Ducharne's Testimony Regarding the Amount of Bonus/Commissions Earned Is Not an Inadmissible Legal or Factual Conclusion ............. 27

F.    Ducharne's Exhibit 1B Does Not Violate the Parol Evidence Rule ........................................................................... 28

G.    Ducharne's Exhibit 1B Is Relevant ..................................... 28

H.    Exhibit 1B Does Not Violate the Best Evidence Rule ...................... 29

I.    Exhibit 1B Does Not Contain Inadmissible Hearsay ....................... 29

J.    Exhibit 1B Is Not Inadmissible on the Issue of "Credibility" ............ 29

VI.    Conclusion ....................................................................... 30

Prayer ..................................................................................... 31

Certificate of Service ................................................................... 32

Certificate of Compliance .............................................................. 33

Appendix .................................................................................. 34

# INDEX OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. D'Entremont*, No. 11-98-00239-CV,
1999 WL 33748043
(Tex. App.—Eastland, Nov. 24, 1999, no pet. ).................................. 8, 14, 17

*Anderson v. Snider*,
808 S.W.2d 54 (Tex. 1991) ...................................................................... 27

*Arrellano v. Tex. Emp't Comm'n*,
810 S.W.2d 767
(Tex. App.—San Antonio 1991, writ denied) ................................................ 16

*Bd. of Ins. Comm'rs v. Guardian Life Ins. Co. of Tex.*,
180 S.W.2d 906 (1944) ............................................................................. 18

*BFI Waste Sys. of N. Am., Inc. v. Martinez Envt'l Grp.*,
93 S.W.3d 570
(Tex. App.—Austin 2002, pet. denied) ........................................................ 20

*Bigham Auto. & Electric Co. v. Tex. Workforce Comm'n*,
No. 07-09-0149-CV, 2010 WL 4105661
(Tex. App.—Amarillo 2010, no pet.) ..................................................... 9, 10

*City of Houston v. Tippy*,
991 S.W.2d 330
(Tex. App.—Houston [1st Dist.] 1999, no pet.) ......................................... 5, 6

*Collingsworth Gen. Hosp. v. Hunnicut*,
988 S.W.2d 706 (Tex. 1998) ............................................................... 15, 16

*David J. Sacks, P.C. v. Haden*,
266 S.W.3d 447 (Tex. 2008) ................................................................... 24

*Elfer v. Tex. Workforce Comm'n*,
169 F. App'x. 378 (5th Cir. 2006)........................................................ 13, 21

*Firemen's & Policemen's Civ. Serv. v. Brinkmeyer,*
    662 S.W.2d 953 (Tex. 1984)........................................................... 5, 9

*Ford Motor Co. v. Butnaru,*
    157 S.W.3d 142
    (Tex. App.—Austin 2005, no pet.)................................................. 20

*Fujimoto v. Rio Grande Pickle Co.,*
    ............................................................... 414 F.2d 648 (5th Cir. 1969)
    ........................................8, 10, 13*G.E. Am. v. Galveston Cent. Appraisal Dist.,*
    979 S.W.2d 761
    (Tex. App.—Houston [14th Dist.] 1998, no pet.)............... 4, 5, 22, 23, 27, 28

*Haggar Co. v. Rutkiewicz,*
    405 S.W.2d 462
    (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.)................................ 8, 10, 13

*Hernandez v. Tex. Workforce Comm'n,*
    18 S.W.3d. 678
    (Tex. App.—San Antonio 2000, no pet.)......................................... 6

*Igal v. Brightstar Info Grp., Inc.,*
    50 S.W.3d 78 (Tex. 2008)......................................................... 22, 23

*Imperial Am. Resources Fund, Inc. v. R.R. Comm'n,*
    557 S.W.2d 280 (Tex. 1977)........................................................... 5

*In re Brookshire Grocery Co.,*
    250 S.W.3d 66 (Tex. 2008)........................................................... 19

*Jackman v. Jackman,*
    533 S.W.2d 361
    (Tex. Civ. App.—San Antonio 1975, no writ)................................. 26

*Jones Bros. Dirt. & Paving Contractors,*
    *92* S.W.3d 477 (Tex. 2002)........................................................... 20

*Levelland Ind. Sch. Dist. v. Contreras,*

865 S.W.2d 474
(Tex. App.—Amarillo 1993, writ denied) ........................................................ 5

*Lohmuller v. Tex. Workforce Comm'n*,
No. 14-00-00008-CV, 2000 WL 1862824,
(Tex. App.—Houston [14th Dist.]
Dec. 21, 2000, no pet.) ........................................ 13, 17, 21, 26, 28

*Mercer v. Ross*,
701 S.W.2d 830 (Tex. 1986) ................................................... 5, 6, 13

*MCI Telecomms. Corp. v. Tyler*,
796 S.W.2d 772
(Tex. App.—Dallas 1990, writ denied) ............................................ 7

*Miller v. Riata Cadillac Co.*,
517 S.W.2d 773 (Tex. 1974) ................................................. 8, 10, 13

*Nuernberg v. Tex. Emp't Comm'n*,
858 S.W.2d 364 (Tex. 1993) ........................................................... 5

*Pipkin v. Kroger Tex., L.P.*,
383 S.W.3d 655
(Tex. App.—Houston [14th Dist.] 2012, pet. denied) ................................ 28

*Robinson v. Reliable Life Ins. Co.*,
569 S.W.2d 28 (Tex. 1978) ........................................................... 21

*R&R Assocs., Inc. v. Visual Scene, Inc.*,
726 F.2d 36 (1st Cir. 1984) ......................................................... 26

*Sturm v. Muens*,
224 S.W.3d 758
(Tex. App—Houston [14th Dist.] 2007, no pet.) ................................. 25, 28

*Tex. Dep't of Pub. Safety v. Axt*,
292 S.W.3d 736
(Tex. App.—Fort Worth 2009, no pet. ) ............................................ 8, 9

*Tex. Dep't of Pub. Safety v. Benoit*,

994 S.W.2d 212
(Tex. App.—Corpus Christi 1999, pet. denied) ............................................ 19

*Tex. Dep't of Transp. v. Jauregui*,
176 S.W.3d 846
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) ............................. 19, 20

*Tex. Dep't of Pub. Safety v. Lavender*,
935 S.W.2d 925
(Tex. App.—Waco 1996, writ denied) ........................................................ 19

*Tex. Dep't of Pub. Safety v. Story*,
115 S.W.3d 588
(Tex. App.—Corpus Christi 2003, no pet) ................................................. 19

*Tex. Emp't Comm'n v. Hays*,
360 S.W.2d 525 (Tex. 1962) ...................................................................... 10

*Tex. Emp't Comm'n v. Torres*,
804 S.W.2d 213
(Tex. App.—Corpus Christi 1991, no writ) ......................... 13, 17, 21, 27, 28

*Trapp v. Shell Oil Co.*,
198 S.W.2d 424 (Tex. 1946) .................................................................. 6, 17

*White v. Bath*,
825 S.W.2d 227
(Tex. App.—Houston [14th Dist.] 1992, writ denied) ................................ 25

*Wilcox v. Marriott*,
103 S.W.3d 469
(Tex. App.—San Antonio 2003, pet. denied) ......................................... 29, 30

**Rules and Statutes**

40 TAC § 821.26 ................................................................ 7, 10, 11, 12, 16, 24, 25

Restatement (Second) of Contracts § 214 (1981)................................................. 25

TEX. GOV'T CODE § 311.011 ................................................................ 18, 21

TEX. GOV'T CODE § 2001.174 ................................................................ 9, 18, 21

TEX. LAB. CODE § 61.015 ................................................................ 7, 11, 24

TEX. LAB. CODE § 212.202 ................................................................ 4, 22

TEX. R. EVID. 801(e)(2)................................................................ 29

TEX. R. EVID. 803(6) ................................................................ 29

TEX. R. EVID. 1002 ................................................................ 25, 29

TEX. R. EVID. 1006 ................................................................ 28

## STATEMENT REGARDING ORAL ARGUMENT

Appellee requests oral argument.

## STATEMENT OF THE CASE

Appellee Gustavo E. Ducharne ("Ducharne") filed his *Plaintiff's Petition for Judicial Review* on September 29, 2010, and his *Plaintiff's First Amended Petition for Judicial Review* on October 10, 2010. (CR. 5). Appellant Texas Workforce Commission ("TWC") filed its *Original Answer of Defendant Texas Workforce Commission* on November 1, 2010. (CR. 31). Appellant Tex-Fin, Inc. ("Tex-Fin") filed its *Answer and Counterclaim of Tex-Fin, Inc.* on November 15, 2010. (CR. 37).

The parties filed their respective cross motions for summary judgment, along with responses to the same, between December 16, 2010, and February 18, 2011. (CR. 42, 74, 117, 145, 176, 186). An oral hearing was conducted on the various summary judgment motions on February 21, 2011. Subsequently, Tex-Fin and Ducharne submitted their post-hearing briefs, along with responses to the same. (CR. 191, 195, 202, 206).

On January 25, 2015, Judge Michael Gomez denied the summary judgment motions of Tex-Fin and the TWC and granted in part Ducharne's summary judgment motion. (CR. 211). In doing so, the trial court reversed and set aside the TWC's decision and ordered the case remanded to the TWC for further proceedings to determine the amount of wages due to Ducharne. (CR. 211).

On April 1, 2015, the trial court entered an order denying Tex-Fin and the TWC's motions for new trial. (CR. 248).

On April 20, 2015, the trial court overruled Tex-Fin's objections to Ducharne's summary judgment evidence. (CR. 258; App. 3:258).

## ISSUES PRESENTED

1. Whether the TWC's decision was supported by substantial evidence or whether the decision was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or capricious, and not supported by substantial evidence.

2. Whether the trial court erred in remanding the proceeding to the TWC for a determination of the amount of commissions owed or whether the trial court was required to reverse and enter judgment.

3. Whether the trial court erred in overruling Tex-Fin's objections to Ducharne's summary judgment evidence.

# I. STATEMENT OF FACTS

Ducharne began working for Tex-Fin in 2004 as a sales representative for Latin America, selling parts for heat exchangers and air coolers in refineries and petrochemical plants. (CR. 127). Ducharne initially worked on a salary. (CR. 127).

On June 11, 2008, Ducharne signed a written agreement (the "Contract") changing his compensation structure, effective January 2008, to an annual salary of $75,400, plus a bonus (in effect a commission) of .5 percent on all Latin American and international sales in which Ducharne participated. (CR. 127; CR. 130; App. 1:130). The Contract did not require Ducharne be employed the entire year to receive the bonus/commission. (CR. 130; App. 1:130). The Contract was signed by Ducharne and Sean Hall, Sales Manager for Tex-Fin. (CR. 130; App. 1:130). The Contract was never modified or superseded. (CR. 127). Pursuant to the Contract, Ducharne was paid a bonus/commission in 2008. (CR. 127).

On April 22, 2009, Tex-Fin terminated Ducharne. (CR. 127). At the time of his termination, for 2009, Ducharne had generated $4,584,591.37 in sales, which entitled him to a bonus/commission payment of $22,922.96. (CR. 127; C.R. 131).

On May 4, 2009, Ducharne sent Sean Hall an email requesting payment. (CR. 127; CR. 132). Tex-Fin responded the same day stating in part:

> Commissions: Commissions are calculated and paid in December and commissions are only paid on collected invoices. Commissions are not paid on outstanding invoices or pending orders and commissions will not be paid early.

(CR. 128; CR. 133; App. 2:133). The email response did not say that any bonus/commission was not owed if Ducharne only worked a partial year, but only indicated it would not be paid prior to December. (CR. 133; App. 2:133).

On or about August 7, 2009, Ducharne filed a Texas Payday Act claim ("Payday Claim") against Tex-Fin with the TWC, which included a claim for unpaid commissions. (CR. 61). Ducharne was not represented by an attorney. (CR. 128).

On January 21, 2010, the TWC dismissed Ducharne's Payday Claim. (CR. 128; CR. 134).

On February 5, 2010, Ducharne appealed the decision to the TWC's Wage Claim Appeal Tribunal and, on April 6, 2010, a hearing was held on the claim. (CR. 128). Tex-Fin was represented by an attorney. (CR. 128). Ducharne was not represented by an attorney and required an interpreter/translator. (CR. 128).

On April 19, 2010, the TWC's Wage Claim Appeal Tribunal affirmed the January 21, 2010 decision to dismiss Ducharne's Payday Claim. (CR. 128; CR. 135). Ducharne then filed an appeal to the TWC. (CR. 128).

On September 23, 2010, the TWC issued a *Findings and Decisions of Commission Upon Review of Claims for Wages*, affirming the decision of the TWC's Wage Claim Appeal Tribunal and adopting its findings of fact and conclusions of law. (CR. 128; CR. 138). Commissioner Ronald G. Congleton dissented from the decision. (CR. 138).

Ducharne timely filed a petition for judicial review on September 29, 2010, pursuant to Texas Labor Code, section 61.062. (CR. 5).

## II. SUMMARY OF ARGUMENT

The trial court was correct in reversing the TWC's decision because the TWC decision was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or capricious. Thus, the decision of the TWC was not supported by substantial evidence.

The TWC decision was not made with regard to relevant statutory and common law regarding agreements for the payments of commissions and the interpretation of contracts. The Contract did not require Ducharne be employed at the time the commission was calculated. The Contract was never superseded in writing by another agreement requiring Ducharne be employed for a full fiscal year.

-3-

The Contract made the basis of Ducharne's wage claim and the regulations applicable to Texas Payday Act claims are dispositive of the claim as a matter of law. The TWC's failure to follow that law required the trial court to grant summary judgment in Ducharne's favor.

The trial court erred by remanding the claim to the TWC for further proceedings regarding the amount of damages owed. The trial court had the authority to enter judgment in Ducharne's favor.

The trial court was correct in overruling Tex-Fin's objections to Ducharne's summary judgment evidence.

## III.  ARGUMENT

**A.   Standard of Review – Trial *de Novo*, Applying the Substantial Evidence Rule**

The standard of judicial review in an appeal from a TWC decision is by trial *de novo,* applying the substantial evidence rule. TEX. LAB. CODE § 212.202(a). (App. 3). Substantial evidence *de novo* review is a hybrid of the substantial evidence and *de novo* review standards. *G.E. Am. v. Galveston Cent. Appraisal Dist.*, 979 S.W.2d 761, 764 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Under pure trial *de novo* review, the court conducts an independent fact-finding proceeding, automatically vacating and substituting its decision for that of the TWC. *Id*. Conversely, under pure substantial evidence review, the court looks only

to the records before the agency to determine whether reasonable minds could not have reached the conclusion reached by the record. *Imperial Am. Resources Fund, Inc. v. R.R. Comm'n*, 557 S.W.2d 280, 285 (Tex. 1977).

Under the hybrid substantial evidence *de novo* review, the court may hear any evidence in existence at the time of the administrative hearing, regardless of whether it was introduced at the hearing, to determine whether substantial evidence supports the agency's decision. *See Firemen's & Policemen's Civ. Serv. v. Brinkmeyer*, 662 S.W.2d 953, 955-56 (Tex. 1984); *City of Houston v. Tippy,* 991 S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *G.E. Am.*, 979 S.W.2d at 764-65. Consequently, the reviewing court must look at the evidence presented at trial, not the records created by the agency. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). In fact, the court is prohibited from reviewing the agency record as a whole, and individual items from the record may only be introduced independently and pursuant to the Texas Rules of Evidence. *Nuernberg v. Tex. Emp't Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993). Furthermore, the findings made by the agency are irrelevant and inadmissible in a hybrid substantial evidence *de novo* review. *Levelland Ind. Sch. Dist. v. Contreras*, 865 S.W.2d 474, 476 (Tex. App.—Amarillo 1993, writ denied) ("If the fact findings of the [TWC] were admissible proof of their own truth in a trial *de novo*, the substantial evidence review would be meaningless . . . .").

Substantial evidence supports the TWC's decision only if reasonable minds could have reached the same conclusion the TWC reached. *Tippy*, 991 S.W.2d at 334. If the evidence is such that reasonable minds *could not* have reached the conclusion that the TWC must have reached to justify its action, the TWC's order must be set aside. *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 441 (Tex. 1946) (emphasis added).[1] It is for the reviewing court to decide whether the evidence is such that reasonable minds could not have reached the conclusion the agency must have reached in order to justify its actions. *Hernandez v. Tex. Workforce Comm'n*, 18 S.W.3d. 678, 681 (Tex. App.—San Antonio 2000, no pet.). If the TWC's decision was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or capricious, it is not supported by substantial evidence. *Mercer*, 701 S.W.2d at 831. Thus, if the TWC applied the wrong legal standard, or failed to properly apply known facts, the reviewing court may overturn the decision. *Id.*

---

[1] Tex-Fin cites to *Trapp v. Shell Oil Co.* for the opposite proposition; a proposition which does not appear in *Trapp*. *See Brief of Appellant Tex-Fin, Inc.*, p. 11.

**B.     Texas Payday Act and Interpretation of Contracts**

Under the Texas Payday Act, commissions and bonuses are due according to the terms of the agreement between the parties. TEX. LAB. CODE § 61.015(a)(1). (App. 6). Commissions or bonuses are earned when the employee has met the required conditions set forth in the agreement between the parties. 40 TAC § 821.26(a)(1). (App. 4). Any changes to a written agreement regarding commissions or bonuses must be in writing. *Id.*

Absent an agreement to the contrary, an employer must pay a terminated employee commissions/bonuses earned as of the time of termination. 40 TAC § 821.26(b). (App. 4). Commissions/bonuses due to a terminated employee after separation are payable based on the terms specified in the agreement of the contract between the parties. 40 TAC § 821.26(c). (App. 4). Changes to written agreements under the Texas Payday Act must be in writing. 40 TAC § 821.26(a)(1). (App. 4). There is no such writing modifying the June 11, 2008 Contract signed by the parties. (CR. 127).

The interpretation of an unambiguous contract is an issue of law for the court. *MCI Telecomms. Corp. v. Tyler*, 796 S.W.2d 772, 777 (Tex. App.—Dallas 1990, writ denied). An improper interpretation of the terms of an unambiguous contract renders an agency decision unreasonable, arbitrary, and capricious and

therefore not supported by substantial evidence. *Allstate Ins. Co. v. D'Entremont*, No. 11-98-00239-CV, 1999 WL 33748043, at *2 (Tex. App.—Eastland, Nov. 24, 1999, no pet.) (not designated for publication).

Where an agreement regarding compensation does not specify an employee is obligated to remain employed for a full fiscal year to be entitled to payment, Texas law mandates employees be paid commissions/bonuses earned up to the date of termination. *See, e.g., Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974); *Haggar Co. v. Rutkiewicz*, 405 S.W.2d 462, 465 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.); *Fujimoto v. Rio Grande Pickle Co.*, 414 F.2d 648, 654 (5th Cir. 1969) (applying Texas law).

**C.  The TWC Did Not Apply the Correct Legal Standard to the Undisputed Facts**

Appellants spend the majority of their briefing emphasizing that the findings of the TWC are presumptively valid and that Ducharne's burden is "formidable."[2] For example, Tex-Fin cites *Texas Department of Public Safety v. Axt* for the proposition that Ducharne's burden to show the TWC's decision was not supported by substantial evidence is formidable.[3] However, in *Axt* (which is not a Payday Act or Texas Workforce Commission case) the "formidable" quotation is made in the context of describing an evidentiary challenge to an agency decision. *Tex. Dep't of*

---

[2] *See Brief of Appellant Tex-Fin, Inc.*, pp. 10-12.
[3] *See Brief of Appellant Tex-Fin, Inc.*, p. 11.

-8-

*Pub. Safety v. Axt*, 292 S.W.3d 736, 739 (Tex. App.—Fort Worth 2009, no pet.). In the very same paragraph of the decision cited by Tex-Fin, the court in *Axt* cites to the other part of the substantial evidence rule, which states that in conducting judicial review of an agency decision a district court "*shall* reverse or remand the case" for any of six discreet reasons. *See id.* (citing TEX. GOV'T CODE § 2001.174 (emphasis added)) (App. 5). Accordingly, if Ducharne demonstrates the TWC's decision was either in violation of a statutory provision (*i.e.*, the Texas Labor Code or the Texas Administrative Code), was affected by an error of law, was not supported by substantial evidence, or was otherwise arbitrary or capricious, then the trial court was required to reverse or remand. *See* TEX. GOV'T CODE § 2001.174. (App. 5).

Similarly, Tex-Fin cites to *Bigham Automotive & Electric Company v. Texas Workforce Commission*, an unpublished case from the Amarillo Court of Appeals, for the proposition Ducharne must conclusively negate all reasonable support for the TWC's decision on any possible ground.[4] *Bigham* cites to the Texas Supreme Court case of *Brinkmeyer*, but *Brinkmeyer* has no such holding. *See Bigham*, No. 07-09-0149-CV, 2010 WL 4105661, at *4; *Brinkmeyer*, 662 S.W.3d at 956.

---

[4] *See Brief of Appellant Tex-Fin, Inc.*, p. 12.

*Bigham* is an outlier, and, in any event, *Bigham* did not involve the TWC misinterpreting an unambiguous contract or otherwise apply a wrong legal standard and is thus distinguishable on these grounds.[5]

The TWC did not follow statutory, regulatory, or common law as it is applied to the unambiguous language of the Contract. Ducharne and Tex-Fin agreed in writing to the payment of a bonus/commission. (CR. 130; App. 1:130). That written agreement does not require Ducharne to work an entire year to be entitled to the bonus/commission, nor to still be employed to recover the bonus/commission earned during the year. (CR. 130; App. 1:130). Therefore, Ducharne met the required conditions in the written agreement between the parties. 40 TAC § 821.26(a)(1). As a result, Ducharne is owed payment for the bonus/commission earned at the time of his termination. *See Miller*, 517 S.W.2d at 775; *Haggar Co.*, 405 S.W.2d at 465; *Fujimoto*, 414 F.2d at 654. At the time he was terminated, Ducharne had earned bonus/commissions in the amount of $22,922.96. (CR. 127).

---

[5] Similarly, *Texas Employment Commission v. Hays*, cited by the TWC, does not state Ducharne must conclusively negate "any possible basis" for upholding the TWC's decision. *See Brief of Appellant Tex-Fin, Inc.*, p. 11. Instead, *Hays* merely states if the administrative decision was correct, the fact that the administrative agency reached the correct decision via an incorrect route does not justify overturning the decision. *See Tex. Emp't Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962). As demonstrated herein, the decision of the TWC was incorrect primarily as a result of an incorrect application of the law, not a weighing of testimony.

In its brief, the TWC attempts to make a distinction between the terms "commission" and "bonus."[6] However, Ducharne uses both terms because the terms are interchangeable and the statute uses both terms. TEX. LAB. CODE § 61.015 ("Payment of Commissions and Bonuses") (App. 6); 40 TAC § 821.26 ("Commissions or Bonuses") (App. 4). The TWC offers no argument or authority for why the terms should be interpreted differently or, if they were, how it would merit a different result. Additionally, Tex-Fin apparently saw no distinction between the terms "bonus" and "commission" as the May 4, 2009 email sent to Ducharne by Tex-Fin acknowledged Ducharne's "commissions" would calculated and paid in December. (CR. 133; App. 2:133).

There are no factual conflicts or ambiguities in the Contract, and neither Tex-Fin nor the TWC have ever argued the terms of the Contract to be ambiguous. Instead, Tex-Fin and the TWC have improperly placed the burden upon Ducharne in contravention to Texas law. Specifically, the TWC found there was "no evidence that the employer ever intended to pay the bonus based on a partial year of work or to pay the bonus before the due date in December." (CR. 137). However, the regulation states, "*[u]nless otherwise agreed*, the employer shall pay, after separation, commissions or bonuses earned as of the time of separation." 40 TAC § 821.26(b) (emphasis added). (App. 4). Additionally, commissions/bonuses

---

[6] *See Brief of Appellant Texas Workforce Commission*, p. 7.

due after termination are payable "based on the routine or practice *specified in the agreement when the employee was employed*." 40 TAC § 821.26(c) (emphasis added) (App. 4).

Thus, the presumption is that the employee is entitled to all bonuses/commissions earned at the time of termination unless the applicable agreement provides otherwise. Accordingly, any subsequent affidavit testimony offered by Tex-Fin does nothing to change the terms reflected in the Contract itself. The routine or practice explicitly specified in the Contract was to pay an employee .5% of total Latin American and International sales the employee participates in. (CR. 130; App. 1:130). The Contract does not specify a routine or practice of not paying for a partial year worked, or otherwise only paying if employed in December. (CR. 130; App. 1:130).

The burden was on Tex-Fin to demonstrate the existence of a change in writing to the Contract whereby Tex-Fin limited its agreement to only pay commissions in the event Ducharne was still employed in December of any given year. *See* 40 TAC § 821.26(a). (App. 4). Ducharne, Tex-Fin, and the TWC agree there was no such separate agreement that altered the Contract. (CR. 127).[7] It was not Ducharne's burden to demonstrate the Contract was modified to entitle

---

[7] *See Brief of Appellant Texas Workforce Commission,* p. 21 and *Brief of Appellant Tex-Fin, Inc.,* p. 6.

him to a bonus/commission for a partial year of work because the Contract's unambiguous language already did so. Tex-Fin owes Ducharne his earned commissions. *See Miller*, 517 S.W.2d at 775; *Haggar Co.*, 405 S.W.2d at 465; *Fujimoto*, 414 F.2d at 654.

A TWC decision may be reversed where the TWC applies the wrong legal standard. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986); *Elfer v. Tex. Workforce Comm'n*, 169 F. App'x. 378, 380 (5th Cir. 2006) (applying Texas law). Here the commission found "no evidence that the employer intended to pay the bonus based on a partial year of work . . . ." (CR. 137). Accordingly, the TWC failed to apply the law that governs the payment of commissions under the Texas Payday Act. The Contract was in writing. The Contract did not require Ducharne remain employed to collect his bonus/commissions. There was no written change to the Contract. This was the legal standard that should have been applied, and because it was based on undisputed facts, it mandated a decision in Ducharne's favor. Because the TWC applied the incorrect legal standard, its decision was not based on substantial evidence. *See, e.g., Tex. Emp't Comm'n v. Torres*, 804 S.W.2d 213, 216 (Tex. App.—Corpus Christi 1991, no writ); *Lohmuller v. Tex. Workforce Comm'n*, 14-00-00008-CV, 2000 WL 1862824, at *1 (Tex. App.—Houston [14th Dist.] Dec. 21, 2000, no pet.).

The TWC overlooked the unambiguous and undisputed terms of the written Contract. In such situations, the decision is not reasonably supported by substantial evidence and must be overturned. *Allstate Ins. Co. v. D'Entremont*, No. 11-98-00239-CV, 1999 WL 33748043, at *2 (Tex. App.—Eastland, Nov. 24, 1999, no pet.) (not designated for publication) ("The TWC decision did not properly calculate claimant's compensation based upon the undisputed facts in accordance with the unambiguous terms of the employment contract; consequently, the decision is not reasonably supported by substantial evidence.").

As Tex-Fin notes in its brief, on May 4, 2009—within two-weeks of Ducharne's termination—a manger of Tex-Fin admitted Ducharne was owed the commissions, stating the commissions would not be paid until that December. In a May 4, 2009 email, Trey Hall stated in part,

> Commissions: Commissions are calculated and paid in December and commissions are only paid on collected invoices. Commissions are not paid on outstanding invoices or pending orders and commissions will not be paid early.

(CR. 133; App. 2:133). Notably, Tex-Fin's email to Ducharne does not deny payment of the commissions based on a partial year of work and acknowledges payment would be due in December. (CR. 133; App. 2:133). In fact, it was not until the hearing in front of the TWC that Tex-Fin first denied owing Ducharne the commissions at all.

-14-

Tex-Fin's attempt to explain away the email is incredible. First, Tex-Fin claims the admission is of no import because "post-termination correspondence . . . is no evidence of an agreement contrary to the written salary package."[8] As shown above, the Contract provided for a bonus "based on .5% of total Latin American, .5% of International sales that [Ducharne] participate in." (CR. 130; App. 1:130). Ducharne's claim for unpaid commissions is not contrary to the written salary package, but follows it to the letter. Tex-Fin understood the same when it drafted the May 4, 2009 email acknowledging the same.[9]

Second, Tex-Fin claims it does not matter that it now contests the same commission it previously admitted owing because contradicting its own testimony merely produces "conflicting testimony."[10] *Collingsworth General Hospital v. Hunnicut*, cited by Tex-Fin for the proposition that "[e]ven where the evidence conflicts, the trial court 'may not set aside a TWC decision,'" does not say that, and never mentions conflicting testimony. *Collingsworth Gen. Hosp. v. Hunnicut*, 988 S.W.2d 706, 708 (Tex. 1998). However, the Supreme Court in *Collingsworth* does state that a court may set aside a TWC decision "if it finds that the TEC's decision was made without regard to the law or the facts and therefore was

---

[8] *See Brief of Appellant Tex-Fin, Inc.*, p. 15.
[9] Tex-Fin's argument that the email is not evidence is curious given that both Appellants claim the Sean Hall affidavit, which was drafted subsequent to Ducharne's termination, is the only evidence supporting the TWC's decision.
[10] *See Brief of Appellant Tex-Fin, Inc.*, pp. 15-16.

unreasonable, arbitrary, or capricious." *Id.* Appellants cite no authority in support of the contention that evidence, misinterpreted by an agency and applied to an improper proposition of law, must be later ignored.

Tex-Fin also cites to *Arrellano v. Tex. Emp't Comm'n*, 810 S.W.2d 767, 771 (Tex. App.—San Antonio 1991, writ denied). However, *Arrellano* involved conflicting testimony offered by the employer and employee at the administrative stage, not the application of improper statements of law to an unambiguous contract. *See id.* Tex-Fin's testimony contradicts its prior admission, the Contract itself, and must be disregarded as a matter of law because the written Contract controls. 40 TAC § 821.26(a)(1). (App. 4).

In effect, Tex-Fin is saying to the Court, "We know we admitted in writing Ducharne was owed the commissions when he demanded payment, but you should ignore that because we said something different when we went to court." Tex-Fin makes a mockery of the oath, in effect contending that as long as it is talking out of both sides of its mouth the Court has to rule in its favor. However, under the substantial evidence rule, the truth still matters.

The vast majority of Appellants' briefing and case law is focused upon the premise that a reviewing court may not substitute its judgment in place of the administrative agency and reach a different decision based upon conflicting testimony. However, as shown above, this is not a case involving "conflicting

-16-

testimony." Instead, this case involves the TWC applying the wrong legal standard to undisputed facts. To reach its decision, the TWC must have determined (i) the written Contract explicitly required Ducharne to be employed at the time the commissions were calculated or (ii) the agreement was later amended in writing to do so. There is no evidence of either. For this reason alone the grant of summary judgment should be affirmed.

Because the evidence is such that reasonable minds could not have reached the conclusion that the TWC must have reached to justify its action, the TWC's order must be set aside. *See, e.g.*, *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 441 (Tex. 1946); *Tex. Emp't Comm'n v. Torres*, 804 S.W.2d 213, 216 (Tex. App.—Corpus Christi 1991, no writ) (affirming trial court's reversal of TWC decision and entering of judgment in favor of employee); *Lohmuller v. Tex. Workforce Comm'n*, No. 14-00-00008-cv, 2000 WL 1862824, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2000, no pet.) (TWC decision not supported by substantial evidence where it was made without regard to the facts and was therefore unreasonable); *Allstate Ins. Co. v. D'Entremont*, No. 11-98-00239-CV, 1999 WL 33748043, at *2 (Tex. App.—Eastland, Nov. 24, 1999, no pet.).

# IV. TRIAL COURT'S REMAND

## A.     The Trial Court Was Within Its Power to Enter Judgment

The Texas Government Code states, when reviewing an administrative decision, a court "shall reverse or remand" the case if the court finds that the decision was either:

(A)     in violation of a constitutional or statutory provision;
(B)     in excess of the agency's statutory authority;
(C)     made through unlawful procedure;
(D)     affected by other error of law;
(E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE § 2001.174. (App. 5).

Thus, the Government Code authorizes the court to either reverse the decision of the TWC or, alternatively, to remand to the TWC for further proceedings. *See id.* Had the statute been written "reverse and remand," then remand would be required. However, the statute must be interpreted according to its express terms. TEX GOV'T CODE § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). "Or" is given a disjunctive meaning of "either," while "and" is a given a

-18-

conjunctive meaning of "both"; they are not interchangeable. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008) (citing *Bd. of Ins. Comm'rs v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (1944)).

Therefore, the district court has the power to reverse the hearing officer's decision and render judgment in favor of the plaintiff or remand it. *See Tex. Dep't. of Pub. Safety v. Story*, 115 S.W.3d 588, 593 (Tex. App.—Corpus Christi 2003, no pet.) ("We interpret this provision to mean that the reviewing court may: (1) reverse the ALJ's decision and render judgment in favor of the party seeking review . . . or (2) reverse the ALJ's decision and remand the cause for further proceedings") (internal citations and quotes omitted); *Tex. Dep't of Pub. Safety v. Benoit*, 994 S.W.2d 212, 213 (Tex. App.—Corpus Christi 1999, pet. denied); *Tex. Dep't of Pub. Safety v. Lavender*, 935 S.W.2d 925, 927 (Tex. App.—Waco 1996, writ denied). *But see Tex. Dep't of Transp. v. Jauregui*, 176 S.W.3d 846, 851 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

As indicated by the cases cited above, there appears to be a split of authority on the issue of whether a reviewing court may enter judgment. However, contrary to the contention of Tex-Fin, it does not appear that the Texas Supreme Court has squarely addressed the issue. Tex-Fin cites from the Texas Supreme Court's

-19-

decision in *Jones Bros. Dirt. & Paving Contractors*,[11] but there, the issue decided was whether the administrative law claim was the exclusive remedy available or whether the party could also recover on separate breach of contract and declaratory judgment claims. The Supreme Court determined the administrative law claim was the exclusive remedy, then stated, without explanation or analysis, that the trial court could only have affirmed or "reversed and remanded." *Jones Bros.*, 92 S.W.3d at 485. Because the Supreme Court found the administrative law judge had not erred in its application of the law, there was no reason to address whether reversal and entering judgment was proper. *See id.* In fact, the Houston First Court of Appeals in addressing the issue cites only to the *Jones Brothers* appellate court decision for the proposition, noting it was reversed on other grounds. *See Jauregui,* 176 S.W.3d at 851. Therefore, it appears there is a split in authority on the issue.

Tex-Fin also cites to *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.) and *BFI Waste Sys. of N. Am., Inc. v. Martinez Envt'l Grp.*, 93 S.W.3d 570, 579 n.9 (Tex. App.—Austin 2002, pet. denied) for the proposition that rendering judgment is an improper usurping of the TWC's authority. However, neither of these cases involved the Texas Labor Code or Texas Payday Act. Multiple courts of appeal, including this one, have interpreted statutory authority to mean they have the authority to reverse and render judgment

---

[11] 92 S.W.3d 477 (Tex. 2002).

-20-

in claims arising under the Texas Labor Code. *See, e.g., Lohmuller v. Tex. Workforce Comm'n*, No. 14-00-00008-cv, 2000 WL 1862824, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2000, no pet.) ("Accordingly, we reverse the judgment of the trial court and we render judgment granting Lohmuller's claim for unemployment benefits."); *Tex. Emp't Comm'n v. Torres*, 804 S.W.2d 213, 216 (Tex. App.—Corpus Christi 1991, no writ) (affirming trial court's reversal of TWC's decision and ordering compensation to employee); *Elfer v. Tex. Workforce Comm'n*, 169 F. App'x. 378, 380 (5th Cir. 2006) ("Accordingly we REVERSE the district court's summary judgment upholding the agency's decision and RENDER judgment in Elfer's favor.") (applying Texas law).

**B.    Because the Trial Court Reversed the TWC, the Trial Court was Required to Render Judgment in Ducharne's Favor**

The ability for a reviewing court to render judgment is based on a clear reading of the statute. The only way one could conclude a reviewing court does not have the ability to render judgment is by reading an "and" into the statutory language where an "or" already exists. *See* TEX. GOV'T CODE § 2001.174. (App. 5). This is contrary to the rules of statutory construction. TEX GOV'T CODE § 311.011; *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 30 (Tex. 1978).

Additional support for the trial court's power to render judgment is found in the rationale behind the Texas Payday Act, which is "designed to resolve claims expeditiously and inexpensively." *Igal v. Brightstar Info Grp., Inc.*, 250 S.W.3d 78, 82 (Tex. 2008). Remanding this case to the TWC and thus requiring Ducharne to go back through three more levels of hearings and additional years of waiting is contrary to the purpose of the statute intended to achieve prompt, expeditious, and inexpensive resolution. It has been six-and-a-half years since Ducharne was terminated and five years since Ducharne filed his petition for review in the trial court. Ducharne's attorneys have incurred more in fees than Ducharne seeks in relief on a statute in which attorneys' fees are not recoverable.

In the course of the administrative process, the TWC hearing officer made a determination about wages, albeit based on a wrong interpretation of the law. The determination of the TWC was that Ducharne was owed nothing. At the summary judgment stage, Ducharne proved-up the actual amount owed. Neither Tex-Fin nor the TWC filed any evidence to dispute these amounts. The trial court's *de novo* standard of review placed the burden on the parties to present this Court with evidence in existence at the time of the TWC's hearing, not simply to rely on what was before the hearing officer. TEX. LAB. CODE ANN. § 212.202(a) (App. 7); *G.E. Am.*, 979 S.W.2d at 764-65. Consequently, it was incumbent upon Tex-Fin and the TWC to present the trial court with evidence of the amount owed if either disputed

Ducharne's computation. *Id.* ("The trial court is to examine the evidence presented before it, rather than the evidence presented to the administrative agency."). Appellants failed to do. The summary judgment record before the trial court, upon which the trial court was asked to and was statutorily empowered to decide, demonstrated the bonus/commissions in the amount of $22,922.96 to be undisputed.

The trial court was able but failed to resolve the matter based upon the summary judgment record before it. As Appellants recognize, wage cases are best decided on summary judgment.[12] As the Texas Supreme Court has previously noted, wage claims are typically too small to justify litigation. *Igal*, 250 S.W.3d at 82. Such is the case here. Remanding the case to the TWC will send Ducharne back to where he started six years ago. Ducharne requests the Court reverse the trial court's remand to the TWC and enter judgment in his favor for $22,922.96.

## V. TEX-FIN'S OBJECTIONS

**A. References in Ducharne's Affidavit to "Bonus/Commissions" Do Not Violate the Parol Evidence Rule**

Ducharne's references to "bonus/commissions" do not violate the parol evidence rule because Ducharne is not attempting to alter the terms of a written contract. The parol evidence rule prohibits evidence of a prior or contemporaneous

---

[12] *See Brief of Appellant Texas Workforce Commission,* p. 14; *Brief of Appellant Tex-Fin, Inc.*, p. 12.

agreement that contradicts a written integrated one. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008). As discussed above (and as Tex-Fin rightly anticipates) the terms "bonus" and "commissions" are used interchangeably in the statutes. TEX. LAB. CODE § 61.015 (App. 6); 40 TAC § 821.26(a)(1) (App. 4). Tex-Fin has not shown how the result would be different—that is, how the agreement would be altered—as a result of referring to the earned payments as being a bonus, a commission, or a "bonus/commission." Because the terms "bonus" and "commission" are consistent with one another and do not vary or contradict the agreement between Ducharne and Tex-Fin, the parol evidence rule is inapplicable. *Cf. Haden*, 266 S.W.3d at 451.

Additionally, as noted above, Tex-Fin saw no distinction between the terms "bonus" and "commission" as the May 4, 2009 email sent to Ducharne by Tex-Fin acknowledged Ducharne's "commissions" would be calculated and paid in December. (C.R. 133; App. 2:133).

**B.    Ducharne's Testimony Regarding the Amount Earned Does Not Violate the Parol Evidence Rule**

Similarly, Ducharne's testimony regarding the amount of sales and the amount of the corresponding bonus/commissions owed does not violate the parol evidence rule. The parol evidence rule applies only where evidence is offered for

the purpose of enforcing an inconsistent agreement. *Sturm v. Muens*, 224 S.W.3d 758, 762 (Tex. App—Houston [14th Dist.] 2007, no pet.) (citing Restatement (Second) of Contracts § 214 (1981)). Commissions are earned when the employee has met the required conditions set forth in the agreement between the parties. 40 TAC § 821.26(a)(1). (App. 4). Any changes to a written agreement regarding commissions must be in writing. *Id.* Absent an agreement to the contrary, an employer must pay a terminated employee commissions earned as of the time of termination. 40 TAC § 821.26(b). (App. 4). Ducharne is simply trying to enforce the written Contract, not a separate or inconsistent one, and is offering evidence of the amount of money he is owed. Ducharne's testimony is entirely consistent with the Contract and, thus, does not violate the parol evidence rule.

**C.      Ducharne's Testimony Regarding the Amount Earned Does Not Violate the Best Evidence Rule**

Ducharne's testimony does not violate the so-called "best evidence rule" because Ducharne is not testifying about the contents of a document, recording, or photograph. *See* TEX. R. EVID. 1002. Therefore, the rule does not apply here. *White v. Bath*, 825 S.W.2d 227, 231 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("[O]nly when one seeks to prove the contents of a document [does] the best evidence rule [apply]. When the document and its contents are only collaterally related to the issues in the case, the best evidence rule does not apply"). Ducharne

is testifying about sales he made for which he had personal knowledge. Texas courts in similar situations have permitted testimony that a payment has been made without the introduction of the bill or check given in payment. *See Jackman v. Jackman*, 533 S.W.2d 361, 362 (Tex. Civ. App.—San Antonio 1975, no writ). Similarly, a witness with knowledge may testify regarding the cost of items in lieu of producing written records regarding the same. *See R&R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984) ("No evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation.").

Ducharne's testimony about the amount owed does not violate the best evidence rule.

### D. Ducharne's Testimony Regarding the Amount of Sales Is Relevant

For the reasons outlined above, Ducharne's testimony about the amount of sales and the corresponding bonus/commissions due him is relevant because the Court does have statutory authority to enter judgment for Ducharne. *See, e.g., Lohmuller v. Tex. Workforce Comm'n*, No. 14-00-00008-CV, 2000 WL 1862824, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2000, no pet.) ("Accordingly, we reverse the judgment of the trial court and we render judgment granting

Lohmuller's claim for unemployment benefits."); *Tex. Emp't Comm'n v. Torres*, 804 S.W.2d 213, 216 (Tex. App.—Corpus Christi 1991, no writ) (affirming trial court's reversal of TWC's decision and ordering compensation to employee).

The amount of sales made and bonus/commissions earned was evidence in existence at the time of the original administrative hearing, and thus may be considered on review. *See G.E. Am.*, 979 S.W.2d at 764.

**E.** **Ducharne's Testimony Regarding the Amount of Bonus/Commissions Earned Is Not an Inadmissible Legal or Factual Conclusion**

Ducharne's testimony regarding the amount of sales made and the corresponding bonus/commissions owed is not inadmissible legal or factual conclusions because the testimony is based on personal knowledge as to the amount in sales and the percentage of bonus/commissions as stated in the Contract. An improper legal conclusion is one that does not provide underlying facts to support the conclusion. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991). Here, Ducharne provided underlying facts based upon his personal knowledge and applied the .05% bonus/commissions multiplier as stated in the Contract. In doing so, Ducharne was able to calculate the amount owed. The facts provided by Ducharne, namely, the amount of sales made and bonus/commissions earned,

could have been rebutted by Tex-Fin. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Tex-Fin failed to do so.

**F.      Ducharne's Exhibit 1B Does Not Violate the Parol Evidence Rule**

Summaries such as Exhibit 1B attached to Ducharne's summary judgment motion are admissible in certain circumstances. TEX. R. EVID. 1006. Exhibit 1B does not violate the parol evidence rule because, as stated above, it is not being offered to enforce an inconsistent agreement, but is instead an application of the facts to the agreement entered into between the parties. *Sturm*, 224 S.W.3d at 762. As discussed above, the Contract merely states payment will be made in December of each year, never stating Ducharne must be employed at the time of payment.

**G.      Ducharne's Exhibit 1B Is Relevant**

As stated above, Exhibit 1B is relevant because the trial court was permitted to consider all evidence in existence at the time of the original administrative hearing. *See G.E. Am.*, 979 S.W.2d at 764. In considering this evidence, the trial court was required to reverse and enter judgment in Ducharne's favor. *See, e.g., Lohmuller*, 2000 WL 1862824, at *3; *Torres*, 804 S.W.2d at 216.

**H. Exhibit 1B does not Violate the Best Evidence Rule**

Exhibit 1B does not violate the "best evidence rule" because Ducharne is not attempting to prove the contents of a document, recording, or photograph. Exhibit 1B simply demonstrates the amount Ducharne is owed in commissions. TEX. R. EVID. 1002.

**I. Exhibit 1B Does Not Contain Inadmissible Hearsay**

Exhibit 1B is not inadmissible hearsay. The full portion of Ducharne's affidavit reads:

> I have personal knowledge of these sales because I made them, have reviewed many of the invoices, confirmed the sales with the customer and that all the customers fully paid Tex-Fin by the end of June 2009.

(CR. 127). Accordingly, Exhibit 1B was based upon Ducharne's personal knowledge and not hearsay, namely, his experience in making the sales. Further, even were Ducharne's testimony made in reliance on invoices prepared by Tex-Fin, his testimony does not constitute hearsay because any such invoices are admissions of a party opponent and/or a business record. TEX. R. EVID. 801(e)(2), 803(6).

**J. Exhibit 1B Is Not Inadmissible on the Issue of "Credibility"**

Exhibit 1B is not inadmissible "on the basis of credibility." "Credibility" is not a basis for an objection to the admissibility of evidence under the Texas Rules of Evidence. The intention of the principle stated in *Wilcox v. Marriott*, cited to by

Tex-Fin, is to preclude parties from obtaining summary judgment based on evidence that is so conclusory, indefinite, and vague that it cannot be controverted. *See Wilcox v. Marriott*, 103 S.W.3d 469, 474-75 (Tex. App.—San Antonio 2003, pet. denied). The way Tex-Fin attempts to apply *Wilcox* suggests the affidavit of a party or interested witness is subject to a significantly higher level of scrutiny than that of any other witness, or that the Texas Rules of Evidence are applied differently in such circumstances. That is simply not the case. Furthermore, the record does not contain any facts cited by Appellants that would tend to discredit or impeach Ducharne's testimony. *See id.* at 475.

## VI. CONCLUSION

The TWC's decision was not supported by substantial evidence. First, the TWC applied an incorrect legal standard in determining eligibility for commission payments. Because Ducharne met the requirements of the written Contract (which did not require he work the entire year and was not amended in writing), Ducharne is entitled to commissions earned while employed. Second, the TWC failed to follow the terms of the unambiguous Contract signed by the parties and the law applicable to such claim.

The trial court was correct in reversing the TWC decision. However, the trial court was required to render judgment in Ducharne's favor in the amount of $22,922.96.

Tex-Fin's objections were correctly overruled.

## PRAYER

For the reasons stated above, Appellee, Gustavo E. Ducharne, requests that the trial court's judgment be affirmed in part regarding the Texas Workforce Commission's denial of Ducharne's wage claim; that the trial court's judgment remanding to the Texas Workforce Commission be reversed; that judgment be rendered in Ducharne's favor in the amount of $22,022.96; that the trial court's overruling of Tex-Fin. Inc.'s objections be affirmed; and that Ducharne receive such further relief to which he may be justly entitled.

Respectfully submitted,

LAW OFFICE OF G. SCOTT FIDDLER, P.C.

/S/ **G. SCOTT FIDDLER**

_____
G. SCOTT FIDDLER
SBOT # 06957750
scott@fiddlerlaw.com
1004 Congress, 2nd Floor
Houston, Texas 77002
Tel:   713-228-0070
Fax:   713-228-0078

ATTORNEY FOR APPELLEE
GUSTAVO E. DUCHARNE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to counsel for Appellants by email, in accordance with the Texas Rules of Appellate Procedure on this the 24th day of September 2015, as follows:

Michael C. Falick, Esq.
mfalick@swbell.net
Rothfelder & Falick, L.L.P.
1201 Louisiana, Suite 550
Houston, Texas 77002

Anthony Aterno, Esq.
Anthony.Aterno@texasattorneygeneral.gov
Assistant Texas Attorney General
Senior Attorney
P.O. Box 12548
Austin, Texas 78711-2548

/S/ **G. SCOTT FIDDLER**

_____
G. SCOTT FIDDLER

-32-

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of TEX. R. APP. P. 9.4(i)(2)(b) because it contains 6,798 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1)

Dated this 24th day of September 2015.

/S/ **G. SCOTT FIDDLER**

_____

G. SCOTT FIDDLER

# <u>APPENDIX</u>

Contract (CR.130)...................................................................................... Tab 1

May 4, 2009 Email (CR. 133) ................................................................... Tab 2

Order Denying Objections MSJ Evidence (CR. 258)........................................ Tab 3

40 TAC § 821.26 ..................................................................................... Tab 4

Tex. Gov't Code § 2001.174 ................................................................... Tab 5

Tex. Lab. Code § 61.015 ........................................................................ Tab 6

Tex. Lab. Code § 212.202 ...................................................................... Tab 7

# TAB 1



**19115 ALDINE WESTFIELD • HOUSTON, TEXAS 77073**
**(281) 821-7150 • FAX (281) 821-1220**

6-11-2008

Gustavo Ducharne,

Tex-Fin would like to continue building our partnership together by extending the following proposal to you effective January 2008. Listed below you will find the salary package including what Tex-Fin is offering on heath insurance and IRA investments:

- Salary: $75,400.00
- IRA of Max 3% matching from Tex-Fin = $2,262.00 (After 1yr Employment)
- Insurance: 50% individual = $2,400.42 50% Tex-Fin = $2,400.42
- Total Maximum Salary Package: $80,062.00

- Total Fin-Tube sales responsible for $4 million @ 20% Margins

- Fin Tube Sales Bonus will be based on .5% of total Latin American. .5% of International sales that you participate in.

- Example Fin Tube Sales: $4 million x .5% = $20,000.00 based on 20% margins.

- Total sales for Air Coolers, Shell & Tube, & Air Cooler Replacement Tube Bundles $6 million @ 20% margin.

- Air Cooler, Shell & Tube, & Air Cooler Replacement Tube Bundles Sales Bonus will be based on .5% of total Latin American Sales. .5% of International sales you participate in.

- Example Air Cooler, Shell & Tube, & Replacement Bundles Sales: $6 million x .5% = $30,000.00 based on 20% margins.

- President/Accounting to make final decisions on which jobs Tex-Fin <u>ACCEPTS</u>, in order to ensure long-term success & profitability.

- $40,000 a year expense account, must have travel summary with customers visited monthly
- Receive 8 Holidays, 2 floating Holidays, 5 Sick/Personal Days(Accrued by the month)
- 2 Weeks Vacation (January 2008)

Tommy & I look forward to working with you in the future growth of Tex-Fin.

Sincerely,

*Sean P. Hall*    6-11-2008          06/11/08

Sean P. Hall
Sales Manager

Exhibit 1A

**Tab 1** 130

# TAB 2

To: Gustavo Ducharne
From: Trey Hall
Date: Monday, May 4, 2009
Subject : Fax regarding pending Issues

Gustavo,

Sean is unable to reply to your fax or any emails as he has been hospitalized do to a broken neck.

Let me take a moment to address some of the issues contained in your fax.

1) Commissions: Commissions are calculated and paid in December and commissions are only paid on collected invoices. Commissions are not paid on outstanding invoices or pending orders and commissions will not be paid early.

2) Vacation Pay: The Employee Hand Book clearly states in Section 303 that "Any employee discharged for cause will automatically be disqualified from receiving any payment for accrued vacation time." I have attached a copy of the aforementioned section of the Employee Hand Book for your review. I have also included a copy of Section 701 from the Employee Hand Book which covers the grounds for which your employment was terminated, insubordination. The pertinent sections are underlined.

3) Severance: There is no severance owed to you, regardless of length of employment. There is provision for severance pay made in the Employee Hand Book and no special provision made for you in a contract for employment.

4) IRA Contributions: All contribution earned at the time of your termination will be paid ASAP.

5) Personal Files: The laptop assigned to you was and is TEX-FIN property and all data on said laptop is the property of TEX-FIN, except where any Local, State or Federal Law specifies otherwise. As I understand it, you are interested in getting personal images contained on the hard drive. I do not see a problem with this, and will export any personal images (i.e. pictures of vacation, personal property etc.) to DVD and forward them to you at my earliest convienence.

In consideration for your service over the past years, Tommy has already included your unused Vacation pay despite being under no legal or contractual requirement to do so.

Your final check is being sent to you via UPS, here is the tracking number: 1Z9R99701396380146

Trey Hall

Exhibit 1D

**Tab 2** 133

# TAB 3

CAUSE NO. 2010-64089

| | | |
|---|---|---|
| GUSTAVO E. DUCHARNE | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| TEX-FIN, INC. and | § | |
| TEXAS WORKFORE COMM. | § | 129TH JUDICIAL DISTRICT |

### ORDER ON TEX-FIN, INC'S OBJECTIONS TO THE PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

After considering Defendant Tex-Fin, Inc.'s Objections to Plaintiff's summary judgment evidence, the Court orders as follows:

1.      The objection to all references in Gustavo Ducharne's affidavit to "bonus/commissions" as violating the parol evidence rule is:

GRANTED: _____          DENIED: ___✗___

2.      The objection to the statement in Gustavo Ducharne's affidavit that "At the time of my termination, I had generated $4,584,591.37 in sales, which entitled me to a bonus/commission of $22,922.96" as violating the parol evidence rule is:

GRANTED: _____          DENIED: ___✗___

3.      The objection to the statement in Gustavo Ducharne's affidavit that "At the time of my termination, I had generated $4,584,591.37 in sales, which entitled me to a bonus/commission of $22,922.96" as violating the best evidence rule is     :

GRANTED: _____          DENIED: ___✗___

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

4. The objection to the statement in Gustavo Ducharne's affidavit that "At the time of my termination, I had generated $4,584,591.37 in sales, which entitled me to a bonus/commission of $22,922.96" as irrelevant is:

GRANTED: _____ DENIED: ___X___

5. The objection to the statement in Gustavo Ducharne's affidavit that "At the time of my termination, I had generated $4,584,591.37 in sales, which entitled me to a bonus/commission of $22,922.96" as inadmissible legal conclusions is:

GRANTED: _____ DENIED: ___X___

6. The objection to the statement in Gustavo Ducharne's affidavit that "At the time of my termination, I had generated $4,584,591.37 in sales, which entitled me to a bonus/commission of $22,922.96" as inadmissible factual conclusions is:

GRANTED: _____ DENIED: ___X___

7. The objection to Gustavo Ducharne's Exhibit1B as violating the parol evidence rule is:

GRANTED: _____ DENIED: ___X___

8. The objection to Gustavo Ducharne's Exhibit1B as irrelevant is:

GRANTED: _____ DENIED: ___X___

9. The objection to Gustavo Ducharne's Exhibit1B as violating the best evidence rule is:

GRANTED: _____ DENIED: ___X___

**Tab 3** 259

10.  The objection to Gustavo Ducharne's Exhibit1B as inadmissible hearsay is:

GRANTED: _____     DENIED: _____X_____

11.  The objection to the Gustavo Ducharne's Exhibit1B on the basis of credibility is:

GRANTED: _____     DENIED: _____X_____

SIGNED on ___April  20___, 2011.

_____
JUDGE PRESIDING

**FILED**
Chris Daniel
District Clerk

Time: _____
APR 2 0 2015
By_____
Harris County, Texas
Deputy

# TAB 4

KeyCite Yellow Flag - Negative Treatment

Proposed Regulation

Texas Administrative Code
Title 40. Social Services and Assistance
Part 20. Texas Workforce Commission
Chapter 821. Texas Payday Rules
Subchapter B. Payment of Wages

40 TAC § 821.26

Tex. Admin. Code tit. 40, § 821.26

§ 821.26. Commissions or Bonuses

Currentness

(a) For purposes of § 61.015 of the Act:

(1) Commissions or bonuses are earned when the employee has met all the required conditions set forth in the applicable agreement with the employer. To change an agreement, there must be prior notice as to the nature and effective date of the changes. Changes to written agreements shall be in writing.

(2) Commissions or bonuses are due to be paid, in a timely manner, according to the terms specified in an agreement between an employer and an employee. The terms should specify the time intervals or circumstances (or combinations thereof) that would cause commissions or bonuses to become payable, such as, but not limited to, weekly, monthly, quarterly, when sales transactions are recorded, upon buyer's remittance, etc.

(b) Unless otherwise agreed, the employer shall pay, after separation, commissions or bonuses earned as of the time of separation.

(c) Commissions or bonuses due after separation from employment are payable based on the routine or practice specified in the agreement when the employee was employed, or on any special agreement made between the employee and the employer upon separation.

(d) Draws against commissions or bonuses may be recovered from the current or any subsequent pay period until fully reconciled.

**Credits**

**Source:** The provisions of this §821.26 adopted to be effective June 1, 1998, 23 TexReg 5732; amended to be effective September 20, 2010, 35 TexReg 8506.

Current through 40 Tex.Reg. No. 5986, dated September 4, 2015, as effective on or before September 11, 2015

40 TAC § 821.26, 40 TX ADC § 821.26

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Tab 4** 2

# TAB 5

Vernon's Texas Statutes and Codes Annotated
Government Code (Refs & Annos)
Title 10. General Government (Refs & Annos)
Subtitle A. Administrative Procedure and Practice
Chapter 2001. Administrative Procedure (Refs & Annos)
Subchapter G. Contested Cases: Judicial Review

V.T.C.A., Government Code § 2001.174

§ 2001.174. Review Under Substantial Evidence Rule or Undefined Scope of Review

Currentness

If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Notes of Decisions (421)

V. T. C. A., Government Code § 2001.174, TX GOVT § 2001.174

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works. **Tab 5** 2

# TAB 6

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 2. Protection of Laborers
            Subtitle C. Wages
                Chapter 61. Payment of Wages (Refs & Annos)
                    Subchapter B. Payment of Wages

V.T.C.A., Labor Code § 61.015

§ 61.015. Payment of Commissions and Bonuses

Currentness

(a) Wages paid on commission and bonuses are due according to the terms of:

   (1) an agreement between the employee and employer; or

   (2) an applicable collective bargaining agreement.

(b) An employer shall pay wages paid on commission and bonuses to an employee in a timely manner as required for the payment of other wages under this chapter.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

V. T. C. A., Labor Code § 61.015, TX LABOR § 61.015
Current through the end of the 2015 Regular Session of the 84th Legislature

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.  **Tab 6** 1

# TAB 7

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 4. Employment Services and Unemployment
      Subtitle A. Texas Unemployment Compensation Act
        Chapter 212. Dispute Resolution
          Subchapter E. Judicial Review of Commission Decision

V.T.C.A., Labor Code § 212.202

§ 212.202. Standard of Judicial Review; Exceptions Not Necessary

Effective: June 20, 2003
Currentness

(a) Judicial review under this subchapter is by trial de novo based on the substantial evidence rule.

(b) It is not necessary in a judicial proceeding under this subchapter to enter exceptions to the rulings of the commission.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 1208, § 1, eff. June 20, 2003.

Notes of Decisions (66)

V. T. C. A., Labor Code § 212.202, TX LABOR § 212.202
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.