

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-276-CV

TEXAS DEPARTMENT OF                                         APPELLANT
PUBLIC SAFETY

V.

JEFFERY BRUCE AXT                                           APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Texas Department of Public Safety (the Department) appeals the trial court's order reversing an administrative order that suspended appellee Jeffery Bruce Axt's driver's license for refusing to provide a breath specimen. In three issues, the Department argues that the trial court erred by reversing the administrative law judge's (ALJ's) findings that reasonable suspicion existed for the officers to stop Axt and that probable cause existed to believe that Axt had

been driving in a public place while intoxicated. Because we hold that the officers did not have reasonable suspicion to stop Axt, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Axt was driving home from a bar at approximately 2:30 a.m. early one morning when he entered the controlled access parking lot for the Arlington police department. The parking lot's entrance and exit are normally restricted by yellow arms that lower to block entry and exit. That night, however, the yellow arms were raised, permitting entrance to the lot. A sign at the parking lot entrance by the raised arms indicated restricted access for authorized personnel only.

Officers Joseph Balson and Meredith DeWall were standing outside the police department's sally port when Axt drove into the parking lot via the entrance with the raised arm. Although the officers did not see Axt's car enter the lot, they saw the car inside the lot and noticed that the driver appeared to be lost and had a difficult time turning and reversing his car to position it toward the lot's exit. The officers stepped in front of Axt's car while it was still inside the parking lot and used a flashlight to direct Axt to stop. Officer Balson then noticed that Axt had red, glassy eyes and slurred speech and appeared disoriented. The officer also detected a strong odor of alcohol coming from the vehicle. Axt admitted that he had just left a bar down the street.

2

The officers detained Axt for field sobriety testing and called Officer Travis Kuhn to administer the tests. Officer Kuhn determined that Axt was intoxicated, arrested him, and after warning him of the consequences of refusing a breath test, requested that he provide a breath specimen. Axt refused, and the Department subsequently suspended his driver's license.

Axt requested an administrative hearing regarding the suspension. Officer Balson was the Department's sole witness at the administrative hearing. The ALJ found that the officers had reasonable suspicion to stop Axt and that Axt was operating a motor vehicle in a public place while intoxicated. The ALJ thus authorized the Department to suspend Axt's driver's license for 180 days. Axt appealed the ALJ's decision to the trial court. The trial court reversed the ALJ's decision, holding that there was no reasonable suspicion to stop Axt. This appeal by the Department followed.

III. Driver's License Suspension Procedures and Standard of Review

At a driver's license suspension hearing, the Department bears the burden of proving that (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and subsequently asked to submit to a breath or blood test; and (4) the person refused to submit to the breath or blood

3

specimen.  *See* Tex. Transp. Code Ann. § 724.042 (Vernon Supp. 2008).

The driver may appeal the ALJ's decision, in which case the county court on appeal will review the ALJ's decision under the substantial evidence standard of review.  *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999).  Additionally, the court of appeals reviews the trial court's substantial evidence review de novo.  *Tex. Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.).

The issue for the reviewing court is not whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the agency's action.  *Mireles*, 9 S.W.3d at 131; *Tex. Dep't of Pub. Safety v. Vasquez*, 225 S.W.3d 47, 52 (Tex. App.—El Paso 2005, no pet.).  The court may not substitute its judgment on the weight of the evidence for that of the ALJ and must uphold the ALJ's finding even if the evidence preponderates against it so long as enough evidence suggests that the ALJ's determination was within the bounds of reasonableness.  *Mireles*, 9 S.W.3d at 131; *S.W. Pub. Serv. Co. v. Pub. Util. Comm'n of Tex.*, 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied).

The burden for overturning an agency ruling is formidable.  *Tex. Dep't of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex. App.—Corpus Christi 2000, no pet.).  If there is evidence to support the ALJ's findings, its decision must be

4

upheld. *Tex. Dep't of Pub. Safety v. Stacy*, 954 S.W.2d 80, 83 (Tex. App.—San Antonio 1997, no writ). But a trial court may reverse an ALJ's determination if a substantial right of the appellant has been prejudiced because the ALJ's findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (Vernon 2008).

## IV.  REASONABLE SUSPICION TO STOP AXT

In its first issue, the Department argues that the trial court erred by reversing the ALJ's finding that the officers had reasonable suspicion to stop Axt. The Department contends that reasonable suspicion existed because Axt committed criminal trespass by entering the Arlington Police Department's parking lot.

A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.) (citing *Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.)). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *See*

5

*Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).  The burden on the State is to demonstrate the reasonableness of the stop.  *See Fisher*, 56 S.W.3d at 163.  The State is not required to show an offense was actually committed or to prove every element of a specific offense,[1] but only that the officer reasonably believed a crime was in progress. *Fisher*, 56 S.W.3d at 163; *Martinez v. State*, 29 S.W.3d 609, 611–12 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

The Texas Penal Code defines criminal trespass to include entry onto the property of another without effective consent and with notice that the entry was forbidden.  Tex. Penal Code Ann. § 30.05(a)(1) (Vernon Supp. 2008). Even though the statutory language of section 30.05(a) does not prescribe a culpable mental state, one is nevertheless required.  *See* Tex. Pen. Code Ann. § 6.02(b) (Vernon 2008).  Intent, knowledge, or recklessness is sufficient to establish responsibility for criminal trespass.  *West v. State*, 567 S.W.2d 515, 516 (Tex. Crim. App. [Panel Op.] 1978); *Day v. State*, 532 S.W.2d 302, 306 n.2 (Tex. Crim. App. 1976) (op. on reh'g), *disapproved of on other grounds by*

---

[1] Contrary to the dissent's assertion, we expressly do not hold that the Department is required to prove every element of an offense to justify an investigative stop.  Dissenting op. at 5.  Instead, we hold that, applying the substantial evidence standard, the trial court correctly found that the ALJ's reasonable suspicion determination was not supported by substantial evidence. *See* Tex. Gov't Code Ann. § 2001.174(2); *Mireles*, 9 S.W.3d at 131; *Vasquez*, 225 S.W.3d at 52.

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007); *see* Tex. Pen. Code Ann. § 6.02(c). Thus, the offense of criminal trespass consists of the following elements: (1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that entry was forbidden or received notice to depart but failed to do so. *See Day*, 532 S.W.2d at 306.

Regarding the fifth element—notice—the court of criminal appeals has explained that

> the obvious intent of the Legislature in including the "notice" requirement in the criminal trespass statute . . . [was] to prevent an innocent trespass upon the "property" of another from incurring criminal liability. For example, where one innocently trespasses upon the unfenced and unposted land of another, no criminal offense would be committed.

*Id.* Section 30.05 defines "notice" to include "fencing or other enclosure obviously designed to exclude intruders" and "signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden." Tex. Penal Code Ann. § 30.05(b)(2)(B)–(C). Thus, as a matter of law, no criminal trespass may occur in the absence of notice that entry is prohibited. *See id.* § 30.05(a)(1); *Moreno v. State*, 702 S.W.2d 636, 640 (Tex. Crim. App. 1986).

7

Here, we are concerned with the ALJ's determination that the officers had reasonable articulable suspicion that Axt was committing the offense of criminal trespass because the record establishes that on the night in question public access to the lot was not restricted. The Department did not need to prove that Axt actually committed criminal trespass by entering the parking lot; rather, it needed to prove that Officer Balson reasonably believed that Axt was committing the offense. *See Fisher*, 56 S.W.3d at 163; *Martinez*, 29 S.W.3d at 611–12. But despite the restricted access sign, Officer Balson (the officer who stopped Axt and the only witness at the administrative hearing) testified and put in his report that on the night in question the arms to the entrance and exit gates were up—*allowing public access to the parking lot*—when Axt entered the lot at 2:30 in the morning.[2] He further testified that Axt appeared

---

[2] Specifically, the following exchange took place between Officer Balson and Axt's defense attorney at the administrative hearing:

Q    Okay. All right. That entry normally has controlled access, doesn't it?

A    Yes, sir.

Q    It has gates for the entry lane—or a gate for the entry lane and a gate for the exit lane. Is that correct?

A    Yes, sir.

Q    The gate being a yellow arm that lowers to block entry or exit. Is that correct?

to be turning around to leave, rather than attempting to park in, the parking lot

---

A Yes, sir.

Q At that particular time both gates were up and not restricting entry or exit. Is that correct?

A That's correct.

Q And you even put in your report that the—both gates were up allowing public access to the parking lot. Is that correct?

A I don't believe I said that. I think Officer DeWall did.

. . . .

Q Okay. Your narrative starts here. Is that correct?

A Yes, sir.

Q Okay. Then as it continues on the next page, ["]Both gates were up allowing public access to the parking lot.["] Is that correct?

A Okay. Sure.

Q Okay. That's what you put in your report. Right?

A Yes. I just didn't see it.

The Department's attorney did not ask Officer Balson any questions at the administrative hearing. Thus, the record establishes that any notice provided by the restricted access sign was negated by the open gates and by the fact that it was 2:00 a.m., not normal business hours, when Axt entered the lot. That is, Officer Balson's testimony and report establish that access to the lot was not restricted on the night in question. Consequently, reasonable suspicion cannot exist that Axt was committing criminal trespass.

9

when he stopped him. Thus, Officer Balson could not have had a reasonable basis to believe that Axt was committing criminal trespass in light of his testimony and his police report indicating that the parking lot's open gates allowed public access on the night in question. The Department has failed to point to evidence in the record that would lead a reasonable person to believe that Axt was committing criminal trespass by turning around in a parking lot at 2:30 a.m. when the lot's gated arms were raised. *See Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (holding that driving very slowly was not suspicious activity that would create a reasonable belief that such activity was related to crime).

For these reasons, we hold that the Department failed to satisfy its burden to demonstrate that an objective basis for the stop existed. *See Ford*, 158 S.W.3d at 492–93; *Fisher*, 56 S.W.3d at 163. Applying the substantial evidence standard, we hold that the trial court correctly found that the ALJ's reasonable suspicion determination was not supported by substantial evidence. *See* Tex. Gov't Code Ann. § 2001.174(2); *Mireles*, 9 S.W.3d at 131; *Vasquez*, 225 S.W.3d at 52.

Because of our disposition of the Department's first issue, we need not address its second or third issues. *See* Tex. R. App. P. 47.1. We affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

CAYCE, C.J. filed a dissenting opinion.

DELIVERED: June 25, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-276-CV

TEXAS DEPARTMENT OF PUBLIC                                    APPELLANT
SAFETY

V.

JEFFERY BRUCE AXT                                            APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I respectfully dissent. I believe the Department met its burden of proving that reasonable suspicion existed to stop Axt's vehicle. I further believe that substantial evidence supports the administrative law judge's (ALJ) conclusion that Officer Kuhn had probable cause to believe Axt was operating a motor vehicle while intoxicated on a public road. Therefore, I would sustain the

Department's issues, reverse the trial court's judgment and render judgment reinstating the ALJ's order authorizing the Department to suspend Axt's driver's license.

The background facts are as follows:

At around 2:30 a.m. on October 27, 2007, two Arlington police officers saw Axt driving a car in a restricted jail parking lot that is marked with signs declaring the area to be for authorized personnel only. The parking lot is also controlled by an access gate, but that night the gate was malfunctioning and allowed entry and exit to any vehicle. Axt's car was already through the gate before the officers noticed it. Axt appeared to be lost and had a difficult time backing and reversing his car to exit the area.

The police officers approached the car while it was still in the jail parking lot and directed Axt to stop. Officer Joseph Balsa noticed that Axt had red, glassy eyes, was slurring his speech, and appeared disoriented. The officer also detected a strong odor of alcohol coming from the vehicle. Axt admitted that he had just come from a bar down the street. Officer Balsa and the other officer detained Axt for field sobriety testing and called Officer Travis Kuhn to administer the tests. Officer Kuhn determined that Axt was intoxicated, arrested Axt, and after warning Axt of the consequences of refusing a breath

2

test, requested that he provide a breath specimen. Axt refused, and the Department subsequently suspended his driver's license.

Axt requested an administrative hearing regarding the suspension. The ALJ concluded that Axt was legally detained and issued an order upholding the suspension of Axt's driver's license. Axt appealed the ALJ's decision to the trial court, complaining that the evidence did not support the ALJ's conclusions that the officers had reasonable suspicion to stop Axt's vehicle and probable cause to believe that Axt had operated a vehicle in a public place while intoxicated. The trial court reversed the ALJ's decision, holding that there was neither reasonable suspicion nor probable cause. This appeal followed.

Administrative license revocation cases are reviewed under the substantial evidence standard of review.[1] The issue for the reviewing court is not whether the ALJ's decision was correct, but only whether the record demonstrates some reasonable basis for the ALJ's action.[2] The court may not substitute its judgment on the weight of the evidence for that of the ALJ and must uphold the ALJ's finding even if the evidence preponderates against it so long as enough evidence suggests the ALJ's determination was within the bounds of

---

[1] Tex. Gov't Code Ann. § 2001.174(2) (Vernon 2008); *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999).

[2] *Mireles*, 9 S.W.3d at 131; *Tex. Dep't of Pub. Safety v. Vasquez*, 225 S.W.3d 47, 52 (Tex. App.—El Paso 2005, no pet.).

reasonableness.[3]  If there is evidence to support the ALJ's findings, the ALJ's decision must be upheld.[4]  Any evidentiary ambiguities should be resolved in favor of the ALJ's findings.[5]  The burden for overturning an agency ruling is formidable.[6]

At a license suspension hearing, the Department bears the burden of proving: (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and subsequently asked to submit to a breath or blood test; and (4) the person refused to submit to the breath or blood test.[7]  There is no dispute in this case regarding the last two requirements.  Accordingly, I focus on whether substantial evidence supports the ALJ's conclusions that reasonable suspicion existed to stop Axt's vehicle and that

---

[3] *...* *Mireles*, 9 S.W.3d at 131; *Sw. Pub. Serv. Co. v. Pub. Util. Comm'n of Tex.*, 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied).

[4] *...* *Tex. Dep't of Pub. Safety v. Stacy*, 954 S.W.2d 80, 83 (Tex. App.—San Antonio 1997, no writ).

[5] *...* *Tex. Dep't of Pub. Safety v. Pruitt*, 75 S.W.3d 634, 639 (Tex. App.—San Antonio 2002, no pet.).

[6] *...* *Tex. Dep't of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex. App.—Corpus Christi 2000, no pet.).

[7] *...* Tex. Transp. Code Ann. § 724.042 (Vernon Supp. 2008).

4

probable cause existed to believe that Axt was operating a motor vehicle in a public place while intoxicated.

The Department argues in its first issue that the officers had reasonable suspicion to stop Axt because they reasonably believed Axt may have been committing the offense of criminal trespass when he entered the restricted parking lot.[8] Axt asserts, and the majority holds, that there was no reasonable suspicion for the stop because the Department did not offer evidence to support every element of criminal trespass. I agree with the Department.

The Department is not required to show an offense was actually committed or to prove every element of a specific offense to establish reasonable suspicion, but only that the officer reasonably believed a crime was in progress.[9] To justify an investigative stop, the officer must have specific and articulable facts from which he can reasonably surmise that the detained person may be associated with a crime.[10] In other words, the officer must reasonably

---

[8] ... A person commits criminal trespass if he enters or remains on property or in a building of another without effective consent and he had notice that the entry was forbidden or he received notice to depart but failed to do so. Tex. Penal Code Ann. § 30.05 (Vernon Supp. 2008).

[9] ... *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *Martinez v. State*, 29 S.W.3d 609, 611–12 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

[10] ... *Davis v. State*, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (op. on reh'g).

5

suspect that (1) some activity out of the ordinary is occurring or has occurred, (2) the detained person is connected with the unusual activity, and (3) the activity is related to a crime.[11] Circumstances which raise a suspicion that illegal conduct is taking place need not themselves be criminal; they only need to include facts which render the likelihood of criminal conduct greater than it would be otherwise.[12]

After reviewing the administrative record, I believe that substantial evidence supports the ALJ's reasonable suspicion holding. Two police officers observed Axt driving a motor vehicle in a restricted jail parking lot at around 2:30 a.m. Although the gate to the parking lot was malfunctioning and allowed entry and exit to any vehicle, the parking lot was marked with signs declaring the area to be for authorized personnel only. Axt's late-night presence in a jail parking lot, where signs warned that the area was closed to the public, warranted the officers' suspicion that Axt was criminally trespassing.[13] I would, therefore, sustain the Department's first issue.

---

[11] Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).

[12] Reyes v. State, 899 S.W.2d 319, 324 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (citing Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)).

[13] See Rue v. State, 958 S.W.2d 915, 917–18 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

In its second issue, which the majority does not reach because of its disposition of the Department's first issue, the Department argues that substantial evidence supports the ALJ's finding that Officer Kuhn had probable cause to believe that Axt was driving while intoxicated in a public place. Axt does not dispute that he was driving while intoxicated. Rather, Axt contests the ALJ's determination that probable cause existed to believe Axt was driving while intoxicated in a public place because, he argues, (1) the jail parking lot was not a public place and (2) neither officer saw him driving before he entered the jail parking lot.

Under section 724.042 of the Texas Transportation Code, in a driver's license suspension hearing, the ALJ must determine "whether probable cause existed to believe . . . [the license holder] was operating a motor vehicle in a public place while intoxicated."[14] The Department did not have to prove that Axt was in fact driving while intoxicated in a public place, but only that there was probable cause to believe that he had been driving in a public place while intoxicated.[15] Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a

---

[14] Tex. Transp. Code Ann. § 724.042(2)(A).

[15] *See id.*

7

particular person has committed or is committing an offense.[16] Probable cause deals with probabilities and requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.[17]

Officer Kuhn's report and probable cause statement indicates that (1) upon his arrival at the jail parking lot, Officer Kuhn was informed that Axt admitted that he had just come from a bar down the street, (2) Officer Kuhn immediately noticed that Axt had slurred speech, trouble balancing, and an odor of an alcoholic beverage coming from his breath and person, (3) Officer Kuhn administered Standardized Field Sobriety Tests including the Horizontal Gaze Nystagmus test, which showed five out of six clues of intoxication, the Walk and Turn test, which demonstrated four out of eight clues of intoxication, and the One Leg Stand, which showed three out of four clues of intoxication, and (4) during the field sobriety tests, Officer Kuhn observed that Axt had difficulty balancing and repeatedly failed to follow instructions. Officer Kuhn reported that he had probable cause to arrest or detain Axt because of Axt's "slurred speech, odor of alcoholic beverage emitted from breath and person, [and]

---

[16] ... *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

[17] ... *Id.*

difficulty balancing," as well as the results of the sobriety tests.  In addition, Officer Balsa observed that Axt had red, glassy eyes.

Based on this record, I would hold that substantial evidence supports the ALJ's conclusion that the officers had probable cause to believe Axt was operating a motor vehicle while intoxicated on a public road.  While the officers did not specifically observe Axt driving on the public road before he entered the jail parking lot, they could have reasonably inferred that Axt became intoxicated at the bar and then drove to the jail parking lot using public streets.[18]  There was no indication of any alcohol in the car, and Axt admitted to the officers on the scene that he had just come from a bar down the street.  Thus, the ALJ did not err in holding that the officers had probable cause to believe that Axt had been driving in a public place while intoxicated.[19]  I would, therefore, sustain the Department's second issue.[20]

---

[18] *See Dep't of Pub. Safety v. Hirschman*, 169 S.W.3d 331, 340 (Tex. App.—Waco 2005, pet. denied); *Stagg v. Tex. Dep't of Pub. Safety*, 81 S.W.3d 441, 444 (Tex. App.—Austin 2002, no pet.).

[19] *See Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App.), *cert. denied,* 510 U.S. 837 (1993) ("In determining whether probable cause existed for the arrest, we examine the cumulative information known to all the officers who cooperated in the arrest.") (citing *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982), *cert. denied,* 469 U.S. 1181 (1985)).

[20] Because of my disposition of the Department's first two issues, I would not need to reach its third issue.  *See* Tex. R. App. P. 47.1.

9

Accordingly, I would reverse the trial court's judgment and render judgment reinstating the ALJ's order authorizing the Department to suspend Axt's driver's license.

JOHN CAYCE
CHIEF JUSTICE

DELIVERED: June 25, 2009