# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-11103

AVI S. ADELMAN,

United States Court of Appeals
Fifth Circuit

**FILED**

September 20, 2019

Plaintiff - Appellee

Lyle W. Cayce
Clerk

v.

STEPHANIE BRANCH, Dallas Area Rapid Transit Police Officer,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-2579

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

Appellant Stephanie Branch appeals the district court's denial of her motion for summary judgment on qualified immunity grounds and on a claim for punitive damages. For the reasons set forth below, we AFFIRM the district court's judgment as to the qualified immunity issue and REMAND for further proceedings; we DISMISS the punitive damages portion of the appeal for want of jurisdiction.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11103

## I.     Background

Branch began working for Dallas Area Rapid Transit ("DART"), the local transportation entity providing bus and rail services, as a police officer in 2006. Appellee Avi Adelman is a freelance journalist who publishes a neighborhood blog and provides photographs to media outlets.

In June 2007, DART issued a directive prohibiting non-DART personnel from using DART facilities or property for unauthorized non-transportation purposes.  Then, in June 2014, DART issued a new policy (the "Photography Policy") allowing people to take photographs on DART property so long as they did not interfere with transportation or public safety activity.   The Photography Policy provided:

> Persons may take photographic or video images, including but not limited to film, digital or video recordings (Images) of DART Property, including but not limited to stations, buses, trains, or other vehicles for their personal use.  Persons taking photographic or video images must not interfere with transportation or public safety activity while taking images.  DART Police Officers may initiate an inquiry or investigation when photography or videotaping activity is suspicious in nature or inconsistent with this policy.

Branch was out on sick leave from May 2014 through January 2016.  She claims that she was thus unaware of DART's Photography Policy during the events leading to this suit.

On the evening of February 9, 2016, Adelman was in downtown Dallas listening to his police scanner when he heard a call for Dallas Fire-Rescue ("DFR") paramedics to respond to a K2 overdose victim at the Rosa Parks Plaza DART station (the "Plaza") and decided to go to the scene.  When he arrived, he noticed a man lying on the ground and being attended to by DFR paramedics.  He began to photograph the scene.  Branch noticed Adelman taking photographs shortly thereafter.  She then positioned herself between

No. 18-11103

Adelman and the medical scene in an apparent attempt to block Adelman from taking photographs.

According to witnesses, Adelman was several feet away from the medical scene and was not interfering with paramedics or police activity. Nevertheless, Branch approached Adelman and demanded that he stop taking photographs. Branch states that she approached Adelman because he appeared suspicious to her. As captured on Branch's audio recording device, the first statement Branch made to Adelman was, "Sir leave." When Adelman refused to leave, Branch demanded his identification. She again demanded that Adelman "leave our property" and told Adelman that the Plaza was not public property.[1]

Branch then told Adelman multiple times that he could not take photographs. Branch first told Adelman he was prohibited from photographing the medical scene; later she instructed Adelman that he could "take pictures from the street but [could not] take pictures here" on DART property. In all, Branch asked Adelman to leave the Plaza nine times and asked for his identification four times. Adelman repeatedly refused.

While Branch was speaking with Adelman, Branch's colleague, DART Police Officer Cannon, remained with DFR paramedics. As Cannon and the DFR paramedics observed the confrontation, a DART recording device captured the following exchange:

> DFR 1 – He was just taking pictures right?
> Officer Cannon – Yea[h] that's why I don't know why she's giving him a hard time[.]
> DFR-1 – Why is she going crazy?
> Officer Cannon – I don't know[,] that's going to be on her[.]  [H]e can take all the pictures he wants[,] that's why I'm not getting involved in that. . . .
> DFR-1 – He knows he wasn't doing nothing wrong so. . . .
> . . .

---

[1] Branch now concedes that the Plaza is public property.

3

Officer Cannon – I don't know why she . . . .  There was no need for that[.]

DFR-2 – Yea[h] I don't know where that idea came from but this is . . . because there is freedom of the press[.]

Nevertheless, less than five minutes after first approaching him and demanding that he stop taking photographs, Branch informed Adelman that she was detaining him.  Branch arrested Adelman for criminal trespass under Texas Penal Code § 30.05 based on her assertion that the Plaza was "not public property" and her belief that Adelman was not allowed to photograph the scene.  Branch also issued Adelman a criminal trespass warning, which banned him from the Plaza and certain other DART transit locations.

DART dropped the criminal trespass charge against Adelman shortly after his arrest.  In a letter explaining the decision, DART stated that Branch's actions were "not in line with department directives" and that DART would undertake a formal review.  Nearly six months later, DART released its investigation results, which indicated that Branch "did not establish Probable Cause to effect the arrest" and that she improperly arrested Adelman while he was "simply taking photographs of a person in a public place."  The report also contained the following conclusions:

- "Adelman was not breaking any laws and would not lead a reasonable person to believe that he was committing a crime or had committed a crime or [was] about to engage in committing a crime. . . .  [T]herefore the arrest of Adelman for criminal trespass was not based on sufficient probable cause."

- "Adelman is viewed simply taking photographs of a person in a public place on DART property who appeared to have passed out.  Adelman is never viewed less than approximately 10 feet from the actual medical scene.  Officers Cannon, Craig or DFR personnel did not witness Adelman ever interfere with medical treatment or medical personnel."

4

- "The evidence indicates that Officer Branch did violate the DART Administrative Employment Manual and did not refrain from activity which was illegal or could reflect negatively on DART when she made various inconsistent or mistaken statements on her DART Police [I]ncident Report . . . and made the arrest of Avi Adelman for criminal trespass."

The report also indicated that Branch made numerous false statements in her incident report, including a statement that Adelman was within a few feet of DFR paramedics and that DFR instructed her to keep Adelman back. The report specified that Branch's incident report contained twenty-three false or inaccurate statements. Branch was suspended for three days as a result of the investigation.

In September 2016, Adelman filed suit against DART and Branch under 42 U.S.C. § 1983. Adelman asserted that Branch arrested him for taking photographs and that she lacked probable cause for the arrest, violating the First and Fourth Amendments. He sought punitive damages based on Branch's alleged "evil motive or intent and/or reckless and callous indifference" to his rights.

Branch and DART both moved for summary judgment. The district court granted in part and denied in part DART's motion and granted in part and denied in part Branch's motion. It held in relevant part that Branch was entitled to qualified immunity on Adelman's First Amendment claim but that "the evidence demonstrate[d] at least a fact issue regarding the element of reasonableness of Branch's arrest of Adelman." The court also denied summary judgment on Adelman's punitive damages claim. This appeal followed.

No. 18-11103

## II.    Jurisdiction and Standard of Review

The denial of a motion for summary judgment is ordinarily not an immediately appealable final decision. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).  But when a party moves for summary judgment on qualified immunity grounds, that party may immediately appeal the district court's denial of summary judgment under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 524–27, 530 (1985).

In the context of such an interlocutory appeal, we lack jurisdiction to evaluate the district court's finding that genuine factual disputes exist.  *See Kinney*, 367 F.3d at 348.  Rather, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported."  *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).  We review this legal question de novo. *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009).

Where, however, the district court fails to identify the particular factual disputes that preclude summary judgment, "this Court has two choices.  We can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order."  *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001).  In reviewing the record, we are "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and alteration omitted).  Thus, "on interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff."  *Gonzales v. Dallas County*, 249 F.3d 406, 411 (5th Cir. 2001).

Although it is typically the better course for the district court to articulate the disputed facts in the first instance, we conclude that it is unnecessary for us to remand for that purpose in this case.

### III.     Discussion

**A. Branch's Qualified Immunity Appeal**

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). Adelman bears the burden of negating Branch's qualified immunity defense by showing "(1) that [Branch] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Turner v. Lt. Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).

Adelman asserts that Branch violated his constitutional rights by arresting him without probable cause. The Supreme Court has interpreted the Fourth Amendment to mean that persons have a right to be free from arrest absent a warrant or probable cause. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975). This right has long been clearly established. *See id.*; *see also Club Retro, LLC v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the] arrests.").

"Officers are . . . entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). Thus, we must determine whether there were "facts and circumstances within [Branch's] knowledge . . . sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Adelman] ha[d]

committed, [was] committing, or [was] about to commit an offense." *Id.* (quoting *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)). "The right to be free from arrest without probable cause is a clearly established constitutional right" for qualified immunity purposes. *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)). The focus is on what a "reasonable officer" would conclude, not Branch's subjective beliefs. *See Westfall*, 903 F.3d at 544–45.

Branch asserts that she arrested Adelman because she believed he had violated Texas Penal Code § 30.05. Section 30.05 provides: "A person commits an offense if the person enters or remains on or in property of another . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." TEX. PENAL CODE § 30.05. "Notice" means "oral or written communication by the owner or someone with apparent authority to act for the owner." *Id.* § 30.05(b)(2). Therefore, criminal trespass occurs where "(1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that entry was forbidden or received notice to depart but failed to do so." *Pena v. Bexar County*, 726 F. Supp. 2d 675, 692 (W.D. Tex. 2010) (quoting *Tex. Dep't of Pub. Safety v. Axt*, 292 S.W.3d 736, 740 (Tex. App.—Forth Worth 2009, no pet.)).

Branch had probable cause for most of these elements: Adelman was a person who intentionally remained on the property of another.[2]    But,

---

[2] Texas Courts of Appeals have held that individuals can trespass on public property by failing to leave when asked. *See, e.g.*, *Spingola v. State*, 135 S.W.3d 330, 335 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Allen v. State*, No. 12-01-00079-CR, 2003 WL 1090366, at *3 (Tex. App.—Tyler Mar. 12, 2003, no pet.) (unpublished) ("Whether the property upon which the alleged trespass was committed is a public place is not a relevant consideration

importantly, Branch did not have authority to order Adelman to depart. Adelman was taking photos in accordance with DART's Photography Policy, which permits people to take photographs on DART property as long as they do not interfere with transportation or public safety activity in doing so. The DART investigation determined that Branch's claims that Adelman was within a few feet of DFR paramedics and that DFR instructed her to keep Adelman back were false. Indeed, the exchange between Cannon and two DFR paramedics during the confrontation shows that even Branch's colleagues knew Branch was acting outside of her authority when she told Adelman to leave. Thus, at a minimum, fact issues exist as to whether Adelman complied with the Photography Policy.[3]

---

under section 30.05. The germane consideration for purposes of section 30.05 is whether the property is 'property of another.'" (citing TEX. PENAL CODE § 30.05)); *Bader v. State*, 15 S.W.3d 599, 607–08 (Tex. App.—Austin 2000, pet. ref'd) ("We hold that in cases involving public property, the State satisfies the 'of another' element of the criminal-trespass statute by proving beyond a reasonable doubt that the complainant has a greater right of possession of the property than does the accused.").

[3] Branch asserts that she was reasonable in *believing* she had authority to order Adelman to leave because she was on sick leave when DART implemented the new Photography Policy that permits the public to take photos on DART property. The old policy apparently would have prohibited Adelman from being on DART property if he wasn't using it for "transportation purposes." If Branch's mistaken understanding of DART policy was reasonable, then her belief that she had authority to order Adelman to leave was also reasonable, and she had probable cause to arrest him for trespassing when he stayed. *See Heien v. North Carolina*, 135 S. Ct. 530, 537 (2014) ("'[P]robable cause' . . . encompasse[s] suspicion based on reasonable mistakes of both fact and law."). *See also Wilson v. Layne*, 526 U.S. 603, 615 (1999) (holding that the officers were entitled to qualified immunity because, although a violation of the Fourth Amendment occurred, "it was not unreasonable for a police officer in April 1992 to have believed that bringing media observers along during the execution of an arrest warrant (even in a home) was lawful"); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."); *Stacey v. Emery*, 97 U.S. 642, 646 (1878) (holding that a certificate of probable cause (which, per *Heien*, 135 S. Ct. at 537, "function[s] much like a modern-day finding of qualified immunity") barred a suit where a government official improperly seized property, but had "reasonable cause"—also known as "probable

No. 18-11103

Because, taking the facts in the light most favorable to Adelman, he complied with the Photography Policy, Branch lacked authority to order him to depart. As a result, she also lacked probable cause to believe that Adelman was violating section 30.05. *See Anthony v. State*, 209 S.W.3d 296, 301, 310–11 (Tex. App.—Texarkana 2006, no pet.) (reversing the appellant's conviction for criminal trespass in a city park under section 30.05 because the arresting officer lacked authority to exclude him from the park). *Anthony* clearly establishes that the absence of exclusion authority negates a criminal trespass claim. *Id.* Thus, no reasonable officer would conclude that she has probable cause to arrest someone for criminal trespass after that person refuses to follow her instructions to leave when she lacks the authority to exclude the person from the property. Accordingly, Branch's assumption of probable cause was objectively unreasonable. Taking the facts in the light most favorable to Adelman, no reasonable officer under these circumstances would conclude that she had authority to eject a person complying with DART policies from public property—and then arrest that person for criminal trespass when he failed to depart. We affirm the district court's denial of summary judgment on qualified immunity grounds.

## B. Branch's Punitive Damages Appeal

Branch also appeals the district court's denial of summary judgment on Adelman's punitive damages claim. We lack jurisdiction to consider this portion of Branch's appeal.

The Supreme Court has enumerated three requirements for appeal under the collateral order doctrine: the order must "[1] conclusively determine

---

cause"—for the seizure). But Branch's mistake was not reasonable. She didn't misinterpret an unclear policy or law; she simply failed to learn about DART's updated policy. And "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws [s]he is duty-bound to enforce." *Heien*, 135 S. Ct. at 539–40.

10

the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). The Court has specified that "the 'narrow' [collateral order] exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation omitted).

A district court's order denying summary judgment on a claim for punitive damages does not fall within the "narrow and selective" class of collaterally appealable orders. *Hallock*, 546 U.S. at 350. Such a denial does not "conclusively determine the disputed question" or "resolve an important issue completely separate from the merits of the action"; rather, the issue of damages is enmeshed with the merits—specifically, whether Branch violated Adelman's Fourth Amendment rights. *Id.* at 349. Nor is the denial "effectively unreviewable on appeal from a final judgment." *See id.* If the district court issues a final judgment assessing punitive damages against Branch, we may review an appeal of that judgment, meaning that the opportunity for review is not "irretrievably lost if it is not reviewed in this collateral appeal." *Cherry v. Univ. of Wis. Sys. Bd. of Regents*, 265 F.3d 541, 546–47 (7th Cir. 2001); *see also Hallock*, 546 U.S. at 349. We conclude that Branch's punitive damages appeal does not fall within the collateral order doctrine.[4] We thus lack jurisdiction over that portion of the appeal.

---

[4] Several of our sister circuits have held in related contexts that punitive damages appeals are not within the collateral order doctrine. *See, e.g.*, *Farhat v. Bruner*, 384 F. App'x 783, 786 (10th Cir. 2010) ("[Defendant] contends that the district court erred in denying summary judgment regarding punitive damages. The court's denial of summary judgment

No. 18-11103

## IV.     Conclusion

For the foregoing reasons, we AFFIRM the district court's order denying summary judgment on qualified immunity grounds and REMAND for further proceedings consistent with this opinion.  We DISMISS for want of jurisdiction Branch's appeal of the district court's order denying summary judgment on Adelman's punitive damages claim.

---

on this issue does not fall within the collateral order doctrine, so we lack jurisdiction to review it."); *Cherry*, 265 F.3d at 547 ("We also decline to address the Board's claim that it is immune from a punitive damages award . . . .  A claim of immunity to a certain class of damages is 'far removed' from a claim of immunity from litigation." (quoting *Burns-Vidlak v. Chandler*, 165 F.3d 1257, 1260 (9th Cir. 1999))); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (holding on appeal of a motion to dismiss that punitive damages are not within the collateral order exception).