

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00377-CV

———————————————

AETNA LIFE INSURANCE COMPANY, INC., Appellant

V.

MICHAEL NAZARIAN MD ASSOC. LLC, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-323539-21

Before Kerr, Bassel, and Walker, JJ.
Opinion by Justice Walker

## OPINION

This is a dispute over the amount to be reimbursed by Appellant Aetna Life Insurance Company, Inc. (Aetna) to Appellee Michael Nazarian MD Assoc. LLC (MNMA) for out-of-network emergency medical services provided by MNMA to one of Aetna's enrollees. After an arbitrator awarded $2,822.76 to MNMA as the reasonable amount for these services pursuant to Chapter 1467 of the Texas Insurance Code, MNMA sought judicial review with the trial court. The trial court found that the arbitrator's decision was not supported by substantial evidence and awarded $19,752.50 to MNMA. In two issues, Aetna complains that the trial court erred because (1) the arbitrator's decision was supported by substantial evidence and (2) the trial court exceeded its authority under the substantial evidence review standard when it determined the reasonable amount. We will reverse the trial court's judgment and render judgment affirming the arbitrator's decision. *See* Tex. Gov't Code Ann. § 2001.174.

## I. CHAPTER 1467 ARBITRATION

Chapter 1467 of the Insurance Code was codified in 2019 to provide an expedited arbitration process for settling payment disputes between insurance companies and out-of-network healthcare providers.[1] *See* Tex. Ins. Code Ann.

---

[1]Under Texas law, insurers such as Aetna are required to directly reimburse out-of-network emergency care providers at "the usual and customary rate or at an agreed rate" to ensure that an enrollee is not penalized for utilizing an out-of-network provider for emergency care. Tex. Ins. Code Ann. § 1579.109(b).

§§ 1467.089(a), .084(a). Chapter 1467 arbitration proceedings are not subject to the more familiar arbitration rules found in Title 7 of the Texas Civil Practice and Remedies Code. *Id.* § 1467.085(b).

After a Chapter 1467 arbitration is initiated, the parties must first participate in a statutorily-mandated settlement teleconference. *Id.* § 1467.084(d). If no settlement is reached, an arbitrator is tasked with making a single determination: the reasonable amount to be paid for the provided out-of-network services. *Id.* § 1467.083. The parties "may not engage in discovery," *id.* § 1467.087(b), but instead must "submit written information" to the arbitrator concerning the amount charged by the provider and the amount actually reimbursed by the insurer, 28 Tex. Admin. Code § 21.5021(g)(2).

Upon receiving this information, the arbitrator "must take into account" ten factors in rendering its decision:

(1) whether there is a gross disparity between the fee billed by the out-of-network provider and:
   (A) fees paid to the out-of-network provider for the same services or supplies rendered by the provider to other enrollees for which the provider is an out-of-network provider; and
   (B) fees paid by the health benefit plan issuer to reimburse similarly qualified out-of-network providers for the same services or supplies in the same region;
(2) the level of training, education, and experience of the out-of-network provider;
(3) the out-of-network provider's usual billed charge for comparable services or supplies with regard to other enrollees for which the provider is an out-of-network provider;

(4)  the circumstances and complexity of the enrollee's particular case, including the time and place of the provision of the service or supply;

(5)  individual enrollee characteristics;

(6)  the 80th percentile of all billed charges for the service or supply performed by a health care provider in the same or similar specialty and provided in the same geozip area as reported in a benchmarking database described by Section 1467.006;

(7)  the 50th percentile of rates for the service or supply paid to participating providers in the same or similar specialty and provided in the same geozip area as reported in a benchmarking database described by Section 1467.006;

(8)  the history of network contracting between the parties;

(9)  historical data for the percentiles described by Subdivisions (6) and (7); and

(10)  an offer made during the informal settlement teleconference required under Section 1467.084(d).

Tex. Ins. Code. Ann. § 1467.083(b)(1)–(10); *see* 28 Tex. Admin. Code § 21.5021(g)(2)-(3).

The arbitrator must then (1) determine which party's offered amount—as modified after either an internal appeal process or the mandatory settlement teleconference—is closest to the reasonable amount for the provided services and (2) select that amount as its binding award. Tex. Ins. Code. Ann. § 1467.088(a).

Finally, "a party not satisfied with the decision" may seek judicial review of the arbitrator's award by filing "an action to determine the payment due to an out-of-network provider." *Id.* § 1467.089(b). In such an action, "the court shall determine whether the arbitrator's decision is proper based on a substantial evidence standard of review." *Id.* § 1467.089(c).

4

## II.  BACKGROUND

### A.  MNMA INITIATES CHAPTER 1467 ARBITRATION

Dr. Michael Nazarian, a cardiothoracic surgeon with MNMA, provided successful emergency care services to a patient who presented with a life-threatening arterial brain blockage.[2]  The patient was covered by a health insurance plan administered by Aetna, and MNMA was an out-of-network provider for Aetna. MNMA billed Aetna $39,505 for these services and Aetna reimbursed MNMA with $1,568.28, which Aetna asserted was its "usual and customary amount" for the particular procedures.

Unsatisfied with the reimbursed amount, MNMA instituted a Chapter 1467 arbitration.  *See* Tex. Ins. Code Ann. § 1467.081.  The parties engaged unsuccessfully in the statutorily-mandated informal settlement conference at which Aetna's final offer was $2,822.76 and MNMA's was $19,752.50.  *See id.* § 1467.084(d).  The dispute was then turned over to an arbitrator who requested that each party submit to him "any information [they] would like [him] to consider in determining the reasonable amount for" the provided services.

---

[2]MNMA claims that the services included two surgeries and "100 hours" of "direct and indirect care."  It describes the two surgeries as (1) a left carotid endarterectomy billed under medical code 35301, which involves opening an artery in the patient's neck to remove plaque buildup, and (2) a procedure to drain a hematoma in the patient's neck which presented the day after the initial surgery billed under medical code 10140.  Aetna alleges that it was actually billed by MNMA for three surgeries because the patient underwent two hematoma-draining procedures rather than one.

## B. MNMA's Information To The Arbitrator

In response, MNMA supplied information to the arbitrator responsive to the ten factors outlined in section 1467.083(b). *See id.* § 1467.083(b). For the first factor, it provided several previous billing statements showing the amounts that insurance companies have paid to MNMA for the same or similar medical services. Of note, one of these statements purports to show that MNMA had been paid $34,320 in April 2020 by a different insurance provider for a procedure billed under medical code 35301. For factors two, four, and five, MNMA recited Dr. Nazarian's professional experience and explained in detail the surgeries and care provided to the patient.

As to factor three, MNMA stated that its usual charges for medical billing codes 35301 and 10140 are $34,320 and $3,610 respectively. For factors six, seven, and nine, MNMA explained that no relevant benchmarking data was available and generally disputed the reliability of such data. For factor eight, MNMA provided no in-network historical data between the parties but stated that it had left Aetna's network after "many years" due to "an inability to negotiate contract rates." And for factor ten, MNMA stated that Aetna had made a final offer of $2,882.76 and that MNMA's final offer of $19,752.50 "reflect[ed] a 50% reduction in charges."

## C. Aetna's Information To The Arbitrator

Aetna supplied to the arbitrator a one-page document that contained information responsive to various of the ten factors. For factor one, Aetna stated that

a gross disparity existed between the fee billed by MNMA and the fees Aetna typically paid to similarly qualified out-of-network providers for the same services. It expounded that

> the original reimbursement allowed for this claim represents the internal benchmark values established using various factors . . . . The reimbursement allowed (for this claim) during the initial adjudication process was based on rates that are approximately 2x[ ](190%) the rate identified in Medicare's Resource Based Relative Value System. The amounts offered in the pre-arbitration negotiation were almost 4x (380%).

As to factor four, Aetna explained that, because the patient had to return to the operating room for two procedures under code 10140 on the same day, the second procedure was "allowed at 50% based on multiple procedure guidelines" and that the "offer during the informal settlement period also took those factors into consideration." As to factor eight, Aetna did not indicate any network history with MNMA but stated broadly that network contract negotiations "focus on maintaining market competitive reimbursement that aligns with efforts to stabilize the overall medical cost as much as possible." For factor ten, Aetna stated that it's final, pre-arbitration offer was $2,822.76. For the remaining factors, Aetna either provided no information or stated that it anticipated that MNMA would supply such information.

Finally, Aetna provided to the arbitrator the following table showing a range of rates for the two applicable medical codes:

| code | REF (per unit) | MCARE2 (per unit) | Description |
|---|---|---|---|
| 35301 | $1,005.97 | $1,128.26 | THROMBOENDARTERECTOMY, INCLUDING PATCH GRAFT, IF PERFORMED; CAROTID |
| 10104 | $93.12 | $120.34 | INCISION AND DRAINAGE OF HEMATOMA, SEROMA OR FLUID COLLECTION |

## D. THE ARBITRATOR DECIDES; MNMA SEEKS JUDICIAL REVIEW

Based on the information provided, the arbitrator concluded that the reasonable amount for the services was $4,286. Because Aetna's final settlement offer of $2,822.76 was closer to the arbitrator's stated reasonable amount, he awarded $2,822.76 to MNMA. *See id.* § 1467.088(a).

MNMA then sought judicial review of the arbitrator's award. *See id.* § 1467.089(b)–(c). It argued that the arbitrator's determination was not based on substantial evidence because it did not consider all ten factors that "must" be considered under Chapter 1467. MNMA complained generally that Aetna's information as to each factor was either non-existent or inadequate and that the benchmarking database did not contain any data for the relevant geozip area as required for factors six, seven, and nine. MNMA requested that the trial court determine the reasonable amount or, alternatively, reverse and remand the case back to the Texas Department of Insurance (TDI).

Aetna responded that the arbitrator had discretion to weigh the factors as he saw fit and that Aetna provided information responsive to each of the factors to the best of its knowledge.

After a non-evidentiary hearing,[3] the trial court entered its final judgment that awarded $19,752.50 to MNMA. The court determined that "the arbitrator's decision [was] not supported by substantial evidence" and that it had "the authority to determine the amount due to the provider pursuant to [S]ection 1467.089 [(b])] of the Texas Insurance Code." Aetna appeals from this judgment.

## III. STANDARD OF REVIEW

We review de novo a trial court's substantial evidence review. *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 878 (Tex. App.—Fort Worth 2009, no pet.). The only issue to consider under substantial evidence review is whether there was "some reasonable basis" for the complained-of decision—not whether the decision was correct. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Texas 1999) ("In fact, an administrative decision may be sustained even if the evidence preponderates against it."); *see* Tex. Gov't Code Ann. § 2001.174; *Tex. Dep't of Pub. Safety v. Axt*, 292 S.W.3d 736, 738 (Tex. App.—Fort Worth 2009, no pet.). In other words, a party seeking to overturn a decision under substantial evidence review faces a "formidable" burden of

---

[3]The record reflects that the only evidence in front of the trial court were two arbitration records filed—one by each party—that purportedly contained all of the information presented to the arbitrator.

9

proof—the decision must be upheld if there is any evidence to support it. *Axt*, 292 S.W.3d at 739; *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000) (holding that a reviewing court must affirm the decision even if there is "only more than a mere scintilla" of evidence to support the decision). Thus, a court may not substitute its judgment for that of the deciding entity on the weight of the evidence. *City of Dall. v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012) (citing Tex. Gov't Code Ann. § 2001.174); *see Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) (stating that a court reviewing for substantial evidence "may not substitute its judgment for that of the agency on controverted issues of fact" because the question to be determined "is strictly one of law").

## IV. DISCUSSION

On appeal, Aetna contends that the trial court erred in rendering its final judgment and overturning the arbitrator's decision because substantial evidence existed to support the arbitrator's decision. We agree.

The arbitrator's role here was very limited: to determine which party's final offer was "closest to the reasonable amount for the provided services" and then to simply select that amount as its final award. Tex. Ins. Code. Ann. § 1467.088(a). Aetna supplied the arbitrator with the following information:

- That MNMA's billed charges constituted a gross disparity from the fees Aetna usually paid to similarly qualified providers for the same services in the same region;

10

- That the original reimbursed amount was based on "internal benchmark values" for the billed services and represented nearly twice (190%) the rate identified in "Medicare's Resource Based Relative Value System";

- That the amount offered at the pre-settlement conference represented nearly four times (380%) that of the Medicare value;

- That the second of the procedures billed under code 10140 was paid at 50% of the usual rate "based on multiple procedure guidelines"; and

- That the range of rates for code 35301 was between $1,005.97 and $1,128.26 and the range of rates for code 10140 was between $93.12 and $120.34.

This information constitutes more than a scintilla of evidence to support the arbitrator's decision that Aetna's final settlement offer of $2,822.76 was closer to the reasonable amount for the provided services than was MNMA's final offer of $19,752.50. *Id.* Thus, we must affirm the arbitrator's decision. *See Montgomery Indep. Sch. Dist.*, 34 S.W.3d at 566.

MNMA argues that Aetna provided information responsive to only one-half of one of the ten factors from Section 1467.083—and that even that information weighed in favor of MNMA. *See* Tex. Ins. Code. Ann. § 1467.083(b)(1)–(10). However, it was for the arbitrator to decide what weight to give to the information; it is not within our discretion—nor was it within the trial court's—to make that assessment. *Stewart*, 361 S.W.3d 562 at 566.

Further, argues MNMA, none of Aetna's information constituted "evidence" adequate to support the arbitrator's award because Aetna's information came only

11

through a single, unreliable, "naked[,] and unsupported statement" in juxtaposition to MNMA's information which was supported by documentary evidence.[4]

But given the informal evidentiary guidelines of a Chapter 1467 arbitration proceeding in which (1) discovery is explicitly prohibited, Tex. Ins. Code Ann. § 1467.087(b), and (2) parties simply submit "written information" for consideration without an evidentiary hearing, 28 Tex. Admin. Code § 21.5021(g)(2), we cannot agree with MNMA that there existed no evidence to support the arbitrator's decision. The Chapter 1467 statutory scheme does not show any regard for the traditional rules of evidence and creates a procedure whereby *all* information supplied to the arbitrator— for example, MNMA's hearsay documentary evidence—would violate some evidentiary rule. To exclude a party's information on evidentiary grounds would leave the Chapter 1467 arbitrator with nothing to consider.

## V. CONCLUSION

Having concluded that there was substantial evidence to support the arbitrator's decision, we reverse the trial court's judgment and render judgment

---

[4]In support of this argument, MNMA points to two cases—*Peaster Indep. Sch. Dist. v. Glodfelty*, 63 S.W.3d 1 (Tex. App.—Fort Worth 2001, no pet.) and *Park Haven, Inc. v. Tex. Dept. of Hum. Servs.*, 80 S.W.3d 211 (Tex. App.—Austin 2002, no pet.). The courts in those cases, though, sought to determine whether evidence presented through evidentiary hearings constituted substantial evidence to support administrative decisions. *See Peaster*, 63 S.W.3d at 6–8; *Park Haven*, 80 S.W.3d at 213–15. Because Chapter 1467 does not permit discovery or evidentiary hearings, *Peaster* and *Park Haven, Inc.* are readily distinguishable from the case here.

12

affirming the arbitrator's decision.  *See* Tex. Gov't Code Ann. § 2001.174.  As such,

we need not consider Aetna's second issue.  *See* Tex. R. App. P. 47.1.


                                        /s/ Brian Walker

                                        Brian Walker
                                        Justice

Delivered:  August 11, 2022

13